[Civ. No. 34876. Second Dist., Div. Four. May 28, 1970.]

MANUEL PENA et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Robert W. Richards for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, James A. Doherty and Jack L. Wells, Assistant City Attorneys, for Defendants and Respondents.

**OPINION**

**IRWIN, J.**\*—Appellants instituted this action to seek a declaration that they were lawfully entitled to be appointed at the various times they

---

\*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.

were first certified for appointment as policemen of the City of Los Angeles, and that respondents cause appellants' service records to be corrected accordingly. Respondents, by their answer, pleaded the statute of limitations (Code Civ. Proc., § 338, subd. 1) as a defense. Appellants appropriately amended their pleadings to offset this defense by alleging estoppel. Trial was had and judgment in favor of the respondents was ordered pursuant to Code of Civil Procedure, section 631.8 on the ground, among others, that the appellants' action was barred by the statute of limitations and that there was no evidence to support appellants' contention that respondents were estopped to raise the statute as a defense. This appeal is from that judgment.

The real purpose of this action and the ultimate relief sought by appellants is a declaration to increase or extend their retirement benefits. To accomplish this, it is apparent that the city's appointment records must be corrected, if legally possible. Their pension rights could not have accrued prior to the time the records disclose they entered the service of the city. (See *Jones* v. *O'Toole* (1923) 190 Cal. 252, 256 [212 P. 9]; *Bowen* v. *City of Los Angeles* (1953) 118 Cal.App.2d 297 [257 P.2d 672].)

While appellants have vigorously argued issues relating to their basic rights and seriously complain of some of the court's findings, the essential questions for our decision are whether appellants' causes of action are barred by the statute of limitations and whether respondents are estopped to raise that defense. Since we conclude that the judgment of the trial court in this respect should be affirmed, our discussion will be confined to these issues.

## I

With minor exceptions, the claims of the five plaintiffs are essentially the same. Each asserts that he had a legally enforceable right to be appointed as a policeman when first certified, or (in the case of appellant Kelley) when he first should have been certified for appointment.[1]

Appellants further contend that they were refused appointment when first certified on the sole basis of their draft classifications; that other candidates had been appointed previously in 1941 while in military service and then were placed upon military leave of absence, and that this unreasonably denied appellants' rights to equal protection of the law guaranteed by the federal and state Constitutions.

---

[1]Appellants contend that section 109(b) when read in conjunction with sections 103 and 106 (Los Angeles City Charter), clearly gave them an enforceable right to demand an appointment.

For a better understanding of appellants' position, we give a brief history of their appointment records:

Appellant Manuel Pena was certified for appointment from a civil service eligible list on June 10, 1942. On July 1, 1942, he enlisted in the United States Navy. He further alleges that he was led to believe by defendants that he had been appointed to the position of police officer of the City of Los Angeles. After discharge from military service he was appointed and sworn in as a regular police officer on October 18, 1945.

Appellant Eugene C. Linton was certified for appointment on April 13, 1942. He alleges that he was on that day advised that he would not be appointed until after discharge from military service. At that time and until he went into the service December 28, 1943, he was a deputy sheriff of Los Angeles County. He was discharged from military service on November 12, 1945, and was appointed as a regular police officer on December 21, 1945.

Appellant John O'Grady was certified for appointment on May 13, 1943, and likewise was informed that he would not be appointed until after his discharge from military service. He went into the service April 8, 1944, and was discharged on November 15, 1945, and was appointed as a regular police officer on August 19, 1946.

Appellant Henry Acosta was certified for appointment on July 24, 1942, and on the following day was informed that he would not be appointed until after discharge from military service. He enlisted in the Navy September 12, 1942, and was discharged March 1, 1946. He was appointed as a regular police officer on May 1, 1946.

Appellant Eugene Kelley was certified for appointment September 22, 1943, after he had enlisted in the Navy on June 14, 1943. He alleges that sometime in early June 1943, he was informed by the personnel division of the police department that his number on the eligible list had been reached and passed, but that he would not be certified because of his draft classification. He was discharged from military service February 3, 1946, and was appointed as a regular police officer on March 21, 1946.

Employment in each case, after military service, was pursuant to the original certifications from the civil service examinations held in 1942-1943.

## II

Assuming, but without deciding, that appellants had enforceable rights to demand appointment at the time they were first rejected following certification for appointment, they could have sought writs of mandate to

enforce their rights at that time. Their causes of action accrued when they were first refused appointment and the statute of limitations started to run as to each appellant on the day he was informed that he would not be so appointed because of his military draft classification. ■ Appellant Pena makes the additional point that he had been led to believe that he had been appointed and was on military leave when he enlisted in the navy. Certainly, as to him, the statute started to run at least on the day he was actually appointed and sworn in, to wit, October 18, 1945, for then he must have become aware that he had not been appointed previously.

■ The statute of limitations applicable to a liability created by statute is three years (Code Civ. Proc., § 338, subd. 1).[2] Subdivision 1 of section 338 is applicable to actions in mandamus. (*Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 429 [116 P.2d 37, 136 A.L.R. 800]; *Baldwin* v. *Fresno City etc. School Dist.* (1954) 125 Cal.App.2d 44, 50 [269 P.2d 942].)

■ Civil actions must be commenced within the periods prescribed in the code after the cause of action shall have accrued. ■ A cause of action accrues when a suit may be maintained thereon, and the statute of limitations begins to run on the date of the accrual. ■ If declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for "coercive" relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred. (*Leahey* v. *Department of Water & Power* (1946) 76 Cal.App.2d 281, 285 [173 P.2d 69].) As was said in *Tostevin* v. *Douglas* (1958) 160 Cal.App.2d 321, 330 [325 P.2d 130]: "Until some conventional right of action has accrued, the statute of limitations does not operate independently to cut off the right to bring one for declaratory relief, and after a 'coercive' right of action has accrued the alternative right to bring an action for the declaratory remedy continues concurrently with the 'coercive' right of action. *But* after the 'coercive' remedy is barred by the statute of limitations, a declaratory relief action may not be utilized to circumvent the purpose of the statute. [Citations of authorities.] The court made this clear in the case of *Maguire* v. *Hibernia Sav. & L. Soc., supra,* [(1944) 23 Cal.2d 719 (146 P.2d 673, 151 A.L.R. 1062)] at page 734: 'We are of the opinion that the period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. Thus, if declaratory relief is sought with reference

---

[2]This three-year period is extended by the Soldiers and Sailors Relief Act of 1940 for the period of time spent in military service. For our purposes it is unnecessary to compute the time of these appellants in military service for even if the statute started to run on the days they were actually sworn in as police officers, appellants would have been foreclosed from pursuing their remedy three years later.

to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred.' "

The conventional right of action referred to in *Tostevin* v. *Douglas, supra,* as applied to the facts of this case, is the right plaintiffs had to file an action in 1942 or 1943, immediately after they were allegedly refused employment. For three years after that right accrued (plus time during which the Soldiers and Sailors Relief Act tolled the statute of limitations), the right to declaratory relief existed concurrently with the right to obtain a writ of mandate, injunction or other effective coercive relief. Thereafter, the right to obtain a declaratory judgment as to their right to be appointed by reason of their certification was barred by the statute of limitations just as the right to coercive relief was then barred.

Appellants cite *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438 [326 P.2d 484], and *Dryden* v. *Board of Pension Comrs.* (1936) 6 Cal.2d 575 [59 P.2d 104], as authority for the proposition that their causes of action in declaratory relief are not barred by the statute of limitations. In our judgment these cases are not applicable to the facts of the case at bench. In neither case did the plaintiffs seek coercive action to determine their status as employees, as pensioners or widowers of pensioners. *Abbott* determined whether plaintiffs were entitled to a fixed or fluctuating pension, and held that the statutory time limitation upon the right to sue for each pension installment commences to run from the time that the installment falls due. *Dryden* is authority for the proposition that a charter provision barred recovery of monthly pension payments which fell due more than six months before the filing of a claim for a pension.

Appellants also argue that the case of *Ferdig* v. *State Personnel Board* (1969) 71 Cal.2d 96 [77 Cal.Rptr. 224, 453 P.2d 728], is some authority that section 338, subdivision 1 of the Code of Civil Procedure does not bar appellants' action. No issue regarding the statute of limitations was involved in that case and we do not consider it as apposite here.

■ Since appellants' alleged claims accrued more than three years before their complaint was filed, we hold that they are barred by the statute.

### III

■ Appellants plead that respondents were estopped from raising the statute of limitations as a defense. ■ As pointed out in *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245], "The existence of an estoppel is generally a question of fact

for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence. (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 266 [42 Cal.Rptr. 89; 398 P.2d 129].)" ▮ The trial court found: "That none of the plaintiffs relied upon any representation made by any authorized officer or employee of the City of Los Angeles in failing to commence any such legal or administrative proceeding within such three year period." Appellants fail to point out to this court where in the record there is any credible evidence to overcome this finding. They make a bald assertion that an estoppel exists; that appellants were advised by the personnel division and relied on it to their detriment. What advice they received or where the evidence of it is in the record is unknown. They do, however, refer to certain pages of the reporter's transcript, but we find nothing there of help to appellants. In the first reference appellant Pena testified that in the period of 1948 and 1949 he had contacted then Captain of Police Parker and Lieutenant Allen as members of the Police Protective League Board; that said league is a protective organization made up of board members from the Los Angeles Police and Fire Departments for the purpose of assisting police officers in the protection of their rights and benefits; that he appealed to them to get his date of appointment changed to July 1, 1942. He stated "Chief Parker was very much in favor of it and indicated that I had a case, and Jack Allen then told me that he would let me know in a week or so if the League could help me in that regard. . . . I was given the information by him that I did not have a case until my 20 years would be theoretically up in 1962, theoretically, because I wouldn't, couldn't say that the City would not let me retire at that time. Therefore, the League felt that I should just wait."

In further elaboration he testified that in late 1949 or early 1950 and in 1962 or the early part of 1963 he had discussions with Chief Parker and other policemen, none of whom had authority at that time to act for respondents.[3]

Nowhere in these references is there any testimony by any person au-

---

[3]Pena testified:

"Q. Now, has anybody in a position of authority with the City of Los Angeles, or the Los Angeles Police Department, has anybody ever told you since your entry into the service, the Police Department service in 1946, that you would get credit for service that you thought you now should attain for the time you were in the military service?

"A. Has anybody told me that I will get credit?

"Q. Yes.

"A. No one.

"Q. Did former Chief of Police Parker ever tell you to wait until you had your 20 years on the force before you filed a lawsuit?

thorized to represent respondents that plaintiffs were advised to wait until they had served 20 years before they had a cause of action. If anyone gave them such advice, it was an attorney retained by the employee league. It should be noted that all of appellants' asserted conversations, upon which they rely to prove an equitable estoppel to raise the statute of limi-

---

"A. I must explain that answer.

"Q. Well, before you explain it, could we have a yes or no.

"A. Yes, but I must qualify it.

"Q. All right. Then I will give you an opportunity to explain, but may I just conduct this my way.

"A. All right, sure.

"Q. When did he tell you this?

"A. This occurred in the sixties, as I recall, when we were trying to get it straightened out through the Police Department, and the City Attorney's office, Civil Service.

"Q. He told you this is 1960. Did he ever tell—

"A. Excuse me—I am sorry?

"Q. Did he tell you this at any time prior to 1960?

"A. I don't recall if he specifically mentioned that back in 1949 when I was first discussing this matter with the Protective League, because I did talk to him one evening at Patriotic Hall at an American Legion meeting.

"Q. American Legion?

"A. I went with him, as I recall, retired sergeant Schamber, I went to the meeting specifically to talk with Parker about it. He was a member of the League at the time and was in the American Legion.

"Q. Did he tell you at that time you should wait until your 20 years was up?

"A. I don't specifically recall at that time any comment like that. He did tell me that I had a cause and that I should pursue it, and he advised me to take it up with the League, which I did.

"Q. Well, so your answer is, no, he didn't tell you to wait, he just told you—

"A. No, I can't recall that at that time.

"Q. Well, it is not that you canot recall it; you recall, do you not, Lieutenant, that he told you to pursue your grievance when you spoke to him at the American Legion meeting?

"A. True.

"Q. Now, after that, and that took place in the late 1949 or early 1950, did it not?

"A. Somewhere along in there, yes, sir.

"Q. Subsequent to that you had conversations with representatives of the Police and Fire Protective League?

"A. True, sir.

"Q. And you had conversations with an attorney?

"A. Yes.

"Q. Representing the Police and Fire Protective League?

"A. Correct.

"Q. And he told you that you didn't have a cause of action until your 20 years were in, isn't that correct?

"A. I don't recall the attorney mentioning that. I got the—

"Q. May I just proceed? This is attorney Marcus, is it not?

"A. I have talked to Marcus two or three times, yes.

"Q. Now, isn't it true that you stated previously during your deposition that you

tations as a defense, took place in late 1949 or thereafter, more than three years after their alleged cause of action accrued.

Appellants next contend in respect to the issue of estoppel that they failed to enforce their rights during the statutory period simply because they had no reason to believe they had any. In cases such as this, ignorance of a right to seek legal redress does not in and of itself toll the statute of limitations. "The statute will begin to run although plaintiff is ignorant of his cause of action, and mere ignorance, not induced by fraud,

had been told by Mr. Marcus, or some attorney from the League in late 1949 or early 1950 that you didn't have a cause of action until your 20 years was in, and there wasn't anything that they could do about it at that particular point in time?

"A. It is quite possible that that is true, and this is about the same time that the League had contacted the City Attorney's office and I had been told what their opinion was. It was all during the same period of time.

"Q. But the fact of the matter remains that following a discussion with former Chief Parker at sometime after that and in late 1949 or early 1950, you had the conversation with attorney Marcus or some other attorney representing the League, and that, in substance, that attorney told you that you had to wait until your 20 years was up before you could bring an action to vindicate the rights you thought you had?

"A. This may have been, might have been.

"Q. Let's get back to 1960 when you say that Chief Parker made some statement to you with respect to waiting until your 20 years was up. Was it in 1960 that this statement was made?

"A. I don't believe it was in there. I am trying to associate dates. This was about the same time that Deputy Chief Linn White was dealing with Mr. Hawthorne, trying to get this nunc pro tunc order through, in that period of time, and when it was determined that they could not get an opinion, a favorable opinion from the City Attorney's office indicating that the Police Commission could issue a nunc pro tunc order correcting an administrative error, and that is all that Parker wanted them to do. When they couldn't get that, then I had a discussion with the Chief and I told him that I had been told as far as the suit was concerned, that I had been told back in 1949 that I should wait until my 20 years were up because I couldn't say that the City wouldn't let me retire, and he said that is pretty good advice, and that, 'You have by blessings to do what—pursue it,' et cetera, and that is the context in which this conversation took place.

"Q. You testified on direct examination that these discussions with Deputy Chief Linn White and Joe Hawthorne took place in 1962 or early 1963, and that following those discussions with Linn White and Joe Hawthorne, that Hawthorne suggested that the Police Department grant a retroactive leave of absence to you?

"A. True.

"Q. And a week later, according to your testimony, you spoke to Chief Parker?

"A. Somewhere around during that period of time.

"Q. All right, so I am just trying to fix the times because they are not certain, they are not clear in my mind, but I think we are getting them down, now.

"You spoke to Parker in the latter part of 1962 or the early part of 1963, and at that time you explained to him what your position was and he told you, after hearing what the attorneys from the League had told you, you say that he stated that, 'That sounds like pretty good advice, go ahead and pursue it.' Isn't that what you just testified to?

"A. Yes.

"Q. Now, isn't it true that what he said was, 'Go ahead and pursue it.' Isn't that

does not toll the running of the statute." (*Collins* v. *County of Los Angeles* (1966) 241 Cal.App.2d 451, 455 [50 Cal.Rptr. 586].)

Our search of the record demonstates a total failure of proof by appellants to establish their allegations of estoppel. The finding of the trial court in this respect is amply justified by the record.

The judgment is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied June 11, 1970, and appellants' petition for a hearing by the Supreme Court was denied July 22, 1970.

---

what you have told us at the time we took your deposition, that Chief Parker told you; 'Go ahead and pursue it.'?

"A. Well, he did say, 'Go ahead and pursue it,' because I did explain to him that I had been told about the twenty—waiting until my time was up, also.

"Q. But, he never at that time stated to you that you ought to wait until your 20 years is up?

"A. I didn't say that he stated that.

"Q. All right, and weren't your 20 years up at that time already?

"A. Yes, they were."