[Civ. No. 53842. Second Dist., Div. Three. Apr. 26, 1979.]

MARIN HOSPITAL DISTRICT, Plaintiff and Respondent, v.
DEPARTMENT OF HEALTH et al., Defendants and Appellants.

444

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, L. Stephen Porter, Assistant Attorney General, Anne S. Pressman and John H. Sanders, Deputy Attorneys General, for Defendants and Appellants.

Memel, Jacobs, Pierno & Gersh, Sherwin L. Memel and Martin J. Thompson for Plaintiff and Respondent.

**OPINION**

**COBEY, Acting P. J.**—The state Department of Health and its director appeal from a judgment in administrative mandamus granting a peremp-

tory writ commanding the department to issue to the Marin Hospital District a certificate of exemption with respect to the district's acquisition of a computerized tomographic full-body scanner. The appeal lies. (Code Civ. Proc., §§ 904.1, subd. (a); 1094.5, subd. (f).)

This appeal poses the fundamental question whether the department's denial of exemption to the district on the basis of the district's noncompliance with two of the requirements of the department's pertinent emergency regulation (Cal. Admin. Code, tit. 22, § 90603, subd. (e)(1), (2)) was valid. A portion of this issue and most of the remaining issues in the case were decided adversely to the department in the very recent decision of this panel in *Verdugo Hills Hospital, Inc.* v. *Department of Health* (1979) 88 Cal.App.3d 957 [152 Cal.Rptr. 263]. There we held that (1) the validity of subdivision (e)(2) of the regulation now before us might be challenged by a petitioner in an administrative mandamus proceeding where the basis of the challenge was that the portion attacked was not a reasonable interpretation of the governing statute (Health & Saf. Code, § 437.11, subd. (a)(2); *id.* at pp. 962-963); (2) subdivision (e)(2) was invalid (*ibid*); (3) a loss of $16,482 was substantial as a matter of law within the meaning of the just-mentioned statute (*id.* at pp. 963-964); and (4) the trial court did not err in directing the issuance of a certificate of exemption under the circumstances of that case (*id.* at p. 964). In view of our holding in *Verdugo* that a loss of $16,482 possessed the requisite substantiality, we likewise conclude that the loss to the district, which is here conceded, of $25,172.87 possesses the same substantiality.[1]

These *Verdugo* holdings, to which we adhere, leave as the primary issue to be decided on this appeal the question as to whether another subdivision of the same departmental regulation is valid. We refer to section 90603, subdivision (e)(1), which reads as follows: "(e) The Department shall issue a Certificate of Exemption pursuant to this section where the Department finds all of the following:

"(1) A financial obligation for the project was committed or incurred by a facility prior to September 9, 1976 either through an enforceable contract entered into by the applicant or through the formal internal commitment of funds by such facility to a force account expenditure.

---

[1]At oral argument the department conceded the correctness and applicability of these *Verdugo* holdings except with respect to the substantiality of the loss here involved.

Such amount committed or incurred, including cost factors set forth in the definition of capital expenditure, shall be certified to be 10 percent of the certified cost estimated for the total project or $75,000, whichever is less."

The district attacks the validity of this subdivision of the regulation as being inconsistent with the statute itself in that the regulation restricts the meaning of the statutory term "financial obligation," which meaning is unrestricted by the statute itself.[2] According to the district, such inconsistency invalidates this subdivision of the regulation under Government Code, section 11374.[3]

This difference in the language of the statute and that of the regulation becomes important here because the district claims that prior to September 9, 1976, it incurred two financial obligations, both of which were in excess of the requisite $75,000. These two obligations, however, admittedly arose only by operation of law and not by either an enforceable contract, as such, or through the formal internal commitment of funds by the district to a force account expenditure. We refer to $93,400 that the district raised essentially through solicitation of private donors by its foundation for the acquisition of the scanner and the $500,000 the district raised by tax levy for the same purpose.

The secondary issue presented by this appeal is whether the trial court erred in awarding to the district's counsel attorneys' fees of $1,500 pursuant to Government Code, section 800.

## Our Holdings

For reasons that are stated elsewhere in this opinion, we hold that (1) the subdivision of section 90603 defining the statutory term "financial

[2]In pertinent part section 437.11 reads: "(a) The state department shall . . . issue a certificate of exemption for those projects . . . where the applicant has shown and the director has found that: (1) The applicant has, prior to the effective date of this section [Sept. 9, 1976], committed or incurred a financial obligation, including any obligation payable by force account, which is certified by a licensed architect or engineer to be 10 percent of the cost of the total project, or seventy-five thousand dollars ($75,000), whichever is less . . . ."

[3]This statute reads in relevant part as follows: "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute."

obligation" is invalid as being inconsistent with the statute because it is more restrictive than the statute;[4] (2) the district was, however, not financially obligated to anyone within the meaning of section 437.11, subdivision (a)(1), with respect to the $93,400 it solicited and collected through its foundation in private contributions for the scanner; (3) on the other hand, the district was so financially obligated to the taxpayers of the district for the $500,000 it levied in taxes for that purpose; (4) counsel for the district are not entitled to attorneys' fees because the denial of exemption to the district, based on the invalid subdivision of the regulation, was neither wholly arbitrary nor wholly capricious within the meaning of Government Code, section 800.

## DISCUSSION

Civil Code, section 1427, defines an obligation as a legal duty by which a person is bound to do, or not to do, a certain thing. Civil Code, section 1428, states that an obligation arises from either a contract between the parties or from operation of law. As already noted, the district claims two such prior obligations.

■ The first such obligation is a supposed one running from the district to the private donors of the $93,400 to return that money if it is not used for the acquisition of a scanner. The district bases this claimed financial obligation upon certain language of Justice Traynor in *Holt* v. *College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, 754 [40 Cal.Rptr. 244, 394 P.2d 932]. There Justice Traynor remarked that "there is the interest of donors who have directed that their contributions be used for certain charitable purposes." He then said, "charitable contributions must be used only for the purposes for which they were received in trust." The district infers from these statements that donors may enforce compliance by the charity with the terms of the charitable trust created by their gifts. The law in California and elsewhere is unfortunately otherwise. No such legal obligation exists and therefore the donors may not recover their contributions from the charity for such noncompliance on the charity's part. ■ ■■ (See *Brown* v. *Memorial Nat. Home Foundation* (1958) 162 Cal.App.2d 513, 538 [329 P.2d 118]; *American Center for Education* v. *Cavnar* (1978) 80 Cal.App.3d

[4]We know of no legislative history bearing upon this question and since the regulation at issue was adopted as an emergency regulation there was no hearing held in connection with its adoption. (See Gov. Code, §§ 11420-11422, 11423-11425.)

476, 498 [145 Cal.Rptr. 726]; Rest.2d Trusts, § 391, com. e; 15 Am.Jur.2d, Charities, § 149, p. 177.)[5]

■ We turn now to the second "financial obligation" relied upon by the district. This obligation was created in the following manner. On July 29, 1975, the board of directors of the district duly adopted the resolution required by Health and Safety Code, section 32201, estimating in writing the amount of money necessary to be raised by district taxation during the next fiscal year (1975-1976). This resolution not only specifically and expressly included $500,000 for the scanner, but also, pursuant to Health and Safety Code section 32221 established a special capital outlay fund in this amount for this purpose. On October 28, 1975, the board of directors of the district duly adopted a second resolution establishing a separate bank account for this capital outlay fund. Funds totaling approximately $500,000, dedicated solely to the acquisition of the scanner, were thereafter deposited in this account prior to September 9, 1976.

The department disputes the conclusion that the foregoing activities of the district created a financial obligation, recognized in law, from the district to the taxpayers of the district. It points out that the first-mentioned resolution merely advised the county board of supervisors how much money the district needed to raise in district taxes during the ensuing fiscal year and that under Health and Safety Code, section 32223, the board of directors of the district, by a four-fifth's vote of the board's full membership, could discontinue this capital outlay fund in whole or in part.

Nevertheless we are of the opinion that a district taxpayer could bring an action, pursuant to Code of Civil Procedure, section 526a, to restrain the district from expending the $500,000 for any purpose other than for the acquisition of the scanner, on the ground that such a diversion of funds raised by taxation for that express purpose would be illegal. ■ It is true that section 526a, read literally, applies only to illegal expenditures of a town, city, county, or city and county, but the courts

---

[5]In connection with the privately donated funds of $93,400, the district calls our attention to the fact that subdivision (a)(4) of the aforementioned Health and Safety Code, section 437.11, expressly states that "the term 'financial obligation' shall include cost factors set forth in the definition of 'capital expenditure' in section 437.10." That definition in section 437.10, subdivision (e)(2), includes "[t]he acquisition, under lease or comparable arrangement, *or through donation,* of . . . equipment for a facility . . . , the expenditure for which would have been considered a capital expenditure if the person had acquired it by purchase." (Italics added.) We do not construe the word "donation" in this context as meaning donated funds, but instead donated equipment, etc.

have extended the coverage of this statute to school districts and to the state itself on the rationale that so doing enables a large body of the citizenry to challenge governmental action that would otherwise go unchallenged in the courts because of the standing requirement. (See *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 267-268 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Los Altos Property Owners Assn.* v. *Hutcheon* (1977) 69 Cal.App.3d 22, 26-30 [137 Cal.Rptr. 775].) We believe that its coverage likewise extends to hospital districts and that therefore the obligation of the district to its taxpayers to expend this $500,000 only for the acquisition of a scanner could be enforced in a taxpayer's suit brought pursuant to section 526a—at least until such time as the board of directors of the district discontinued this particular outlay fund in whole or in part pursuant to the aforementioned Health and Safety Code section 32223.

We do not think that the possibility of this obligation being terminated by the board of directors of the district makes it any less an obligation of the district. ■ The Legislature did not specify that the requisite financial obligation under section 437.11 had to be an irrevocable one. Without such specification, a revocable obligation is clearly sufficient.

■ This brings us to the final question to be resolved in this opinion. Were the district's lawyers entitled to the $1,500 in fees for their work in this case at the trial level, which the trial court awarded them pursuant to Government Code, section 800?

We hold that they were not so entitled. Section 800 authorizes such awards only "where it is shown that the . . . determination of [an administrative] . . . proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity." While we have concluded that subdivision (e)(1) of the administrative regulation, here considered and partially relied on by the department in denying the district its certificate of exemption, constituted an impermissible narrowing of the plain meaning of the term "financial obligation" in the statute and was therefore inconsistent with it, we do not regard this subdivision of the regulation as being without any rational support whatsoever. This being the case, the department's action challenged in this case was neither wholly arbitrary nor wholly capricious. (See *Bedford Investment Co.* v. *Folb* (1947) 79 Cal.App.2d 363, 366 [180 P.2d 361]; cf. *Verdugo Hills Hospital, Inc.* v. *Department of Health, supra,* 88 Cal.App.3d at p. 964.)

## DISPOSITION

The judgment under appeal is modified by striking therefrom the provision for attorneys' fees. As so modified, it is affirmed. Ordinary costs on appeal are awarded to respondent, Marin Hospital District.

Allport, J., and Potter, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 5, 1979.