Opinion
 

 COBEY, Acting P. J.
 

 Petitioner, Cathy Gunn, appeals from a judgment denying her petition for a writ of mandate directing respondents, California Employment Development Department and California Unemployment Insurance Appeals Board to set aside the determination and decision of each of them that she was ineligible for unemployment insurance benefits. The appeal lies. (Code Civ. Proc., §§ 904.1, subd. (a), 1094.5, subd. (f).)
 

 Facts
 

 On July 30, 1976, petitioner opened her claim for benefits at the Santa Barbara office of the department. She was interviewed there on August 20, 1976, to determine initially her eligibility for benefits. At that time each of three of the departmental personnel who saw her concluded that she was pregnant because of her physical appearance and the way she walked, sat, and arose from her chair. The interviewer asked her in a soft voice if she were pregnant. She refused to answer the question because, according to her, the question was discriminatdry.
 
 [1]
 
 The interviewer then asked her if she were seeing a doctor. Petitioner refused to answer this question as well, but did take a copy of the standard departmental health questionnaire. The last two questions of this form expressly relate to pregnancy.
 
 [2]
 
 She, however, refused at that time to give the department any information relative to the condition of her health or regarding her apparent pregnancy. She was willing, though, to give the department information as to other matters. The department thereupon denied her any benefits on the basis that she had refused to give it sufficient information to determine her eligibility for benefits.
 

 
 *662
 
 She never returned the health questionnaire, filled out by her physician, to the department. She did, however, provide the administrative law judge at the time of the hearing of her appeal in November 1976 from the department’s determination of ineligibility, with a doctor’s certificate dated August 27, 1976, stating that she “is in good health and may
 
 [3]
 
 At this hearing on November 4, 1976, petitioner refused to answer any of the judge’s or the department’s questions about her physical condition (including her pregnancy) relating either to the time when she opened her claim or to the time of the hearing.
 

 The administrative law judge, by written decision, affirmed the department’s denial of benefits and the board affirmed that decision by a divided vote.
 

 The issue presented by this appeal is whether petitioner was constitutionally privileged to withhold from the department and the board the information they sought regarding her general health and specifically whether she was, and for how long she had been, pregnant. These two pieces of information were related since her apparent pregnancy was undoubtedly the sole reason why the department asked that she have her physician complete its health questionnaire. Petitioner contends that the department’s inquiries of her constituted unconstitutional sex-based discrimination and an unjustified invasion of her constitutional right to privacy. We agree generally for reasons that follow.
 

 Discussion
 

 A.
 
 The Inquiry Into Pregnancy and General Health
 

 Whether the department’s and the board’s seeking to confirm the existence of petitioner’s apparent pregnancy in itself constituted unconstitutional sex-based discrimination may be debatable. As Justice Stewart pointed out in
 
 Geduldig
 
 v.
 
 Aiello
 
 (1976) 417 U.S. 484, 496-497, footnote 20 [41 L.Ed.2d 256, 264-265, 94 S.Ct. 2485], a classification based on pregnancy is not in reality solely a gender-based classification since the classification of nonpregnant persons includes women as well as men.
 
 [4]
 
 
 *663
 
 But, for the sake of this discussion, we shall assume that, at least under California constitutional law, inquiry into the existence and effect of pregnancy is discriminatory under the rationale that only women can become pregnant. (See
 
 Sail'er Inn, Inc.
 
 v.
 
 Kirby
 
 (1971) 5 Cal.3d 1, 20 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].) In any event, the United States Supreme Court has recognized for some years that an individual, married or single, has a federal constitutional right of privacy “to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.” (See
 
 Eisenstadt
 
 v.
 
 Baird
 
 (1972) 405 U.S. 438, 453 [31 L.Ed.2d 349, 362, 92 S.Ct. 1029].) Moreover, our state Constitution has contained since November 1972 an express inalienable right of privacy. (Cal. Const., art. I, § 1.) This provision is intended to be self-executing and protects against, among other things, unwarranted disclosure to governmental agencies of personal information. (See
 
 White
 
 v.
 
 Davis
 
 (1975) 13 Cal.3d 757, 773-775 [120 Cal.Rptr. 94, 533 P.2d 222].)
 

 But the
 
 White
 
 decision recognizes that an incursion into an individual’s area of privacy may be justified by a compelling state interest.
 
 (Id.,
 
 at p. 775.) Such an interest existed in this case. Section 100 of the Unemployment Insurance Code declares that the public good and the general welfare of the citizens of this state require the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for
 
 persons unemployed through no fault of their own
 
 and section 1253, subdivision (c), of the same code provides that an unemployed individual is eligible to receive unemployment compensation benefits with respect to any week
 
 only
 
 if the director finds that, among other things,
 
 he was able to work
 
 and
 
 available for work
 
 during that week. (See
 
 Chambers
 
 v.
 
 Unemployment Ins. Appeals Bd.
 
 (1973) 33 Cal.App.3d 923, 927 [109 Cal.Rptr. 413];
 
 International Union of United Auto. etc. Workers
 
 v.
 
 Department of Human Resources Dev.
 
 (1976) 58 Cal.App.3d 924, 932 [130 Cal.Rptr. 368].)
 

 Consequently to be eligible for unemployment insurance benefits in this state, a claimant must establish with respect to any week both her ability to work and her availability for work. Pregnancy in its last stages, without complications, and at any stage with complications, may render a woman either unable to work or unavailable for work, or both.
 
 *664
 
 Accordingly, an inquiry by the department and the board into the potential effect of an apparent pregnancy upon a claimant’s health would appear to be constitutionally permissible provided such inquiry is conducted in the least intrusive manner
 
 [5]
 

 This poses the question whether the insistence by the department and the board upon learning these two facts in this case via a returned, completed standard health questionnaire prior to ruling her eligible for benefits, was constitutionally justified. The department was apparently never informed by petitioner of the existence of the letter she had from her doctor stating that she was in good health and might work until the administrative appeal hearing in November 1976, even though the letter was addressed to the department. As previously noted, though, the board was advised of both the existence and the contents of this letter in the appeal petitioner executed on August 30, 1976, which paper the board received three days later. It will be recalled that the department had previously been informed by petitioner when she opened her claim for benefits on July 30, 1976, that the termination of her prior employment had nothing to do with her apparent pregnancy. Under these circumstances both the board and the department should have accepted the certificate or letter from petitioner’s physician as, at the very least, prima facie proof that she was apparently eligible for benefits at least from August 27, 1976, on.
 
 [6]
 
 As inferentially suggested by the dissenting member of the board, petitioner’s qualification for benefits should then have continued on throughout her pregnancy provided she also furnished to the department an identical letter or letters covering the remaining weeks of her pregnancy and provided further that the department was able to
 
 *665
 
 satisfy itself each week as to the accuracy of her doctor’s opinion based upon reasonable inquiry of him and any other necessary relevant medical evidence.
 

 Such conduct would have comported with the applicable constitutional requirement of minimum necessary intrusion into petitioner’s privacy. (See
 
 Britt
 
 v.
 
 Superior Court
 
 (1978) 20 Cal.3d 844, 855-856 [143 Cal.Rptr. 695, 574 P.2d 766];
 
 City of Carmel-By-The-Sea
 
 v.
 
 Young
 
 (1970) 2 Cal.3d 259, 263 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313]; cf.
 
 Cleveland Board of Education
 
 v.
 
 LaFleur
 
 (1974) 414 U.S. 632, 647, fn. 14 [39 L.Ed.2d 52, 64, 94 S.Ct. 791];
 
 Arp
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1977) 19 Cal.3d 395, 406 [138 Cal.Rptr. 293, 563 P.2d 849].) She would have been spared confirming to the department her pregnant condition—a fact she wished to keep verbally to herself. Constitutionally the department could require from or through her initially no more than her doctor’s certificate of good health under the circumstances of this case.
 

 B.
 
 Attorney’s Fees
 

 Petitioner seeks her reasonable attorney’s fees under both Government Code section 800 and Code of Civil Procedure section 1021.5. The statutory basis for such fees under section 800 is that the denial of benefits challenged by petitioner “was the result of arbitrary or capricious action.” We believe not. The department and the board simply insisted upon petitioner following the normal administratively prescribed method of establishing her right to benefits when there existed a question regarding a condition of her health that possibly rendered her potentially unable to, or unavailable for, work. In other words, both the department and the board insisted that she establish her eligibility for benefits in the usual fashion under such circumstances—that is, by having her physician complete the department’s standard health questionnaire. We cannot say that this administrative conduct under these circumstances was entirely arbitrary and capricious—that is, conduct lacking any reasonable basis whatsoever. (See
 
 Marin Hospital Dist.
 
 v.
 
 Department of Health
 
 (1979) 92 Cal.App.3d 442, 450 [154 Cal.Rptr. 838].)
 

 On the other hand, it seems to us that petitioner is qualified for attorney’s fees under the private attorney general theory codified in Code of Civil Procedure section 1021.5 provided she hereafter moves in the trial court for them, both for services rendered at trial and on appeal. This statute, effective January 1, 1978, applies to all cases then pending, including this one.
 
 (Woodland Hills Residents Assn.
 
 v.
 
 City Council of Los
 
 
 *666
 

 Angeles
 
 (1979) 23 Cal.3d 917, 925, 928-932 [154 Cal.Rptr. 503, 593 P.2d 200].) It authorizes an award of attorney’s fees “to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if; (a) a significant benefit, whether pecuniary or nonpecuniaiy, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.” The important right affecting the public interest which has been enforced in this case is the constitutional right to privacy. A significant nonpecuniaiy benefit has been conferred by this case upon a large class of persons, namely, working women who became pregnant and unemployed. Petitioner is pursuing this appeal in forma pauperis. It is quite apparent from this circumstance that it would be an undue financial burden to place upon her the costs of this necessary private enforcement of this important right. These fees should not in the interest of justice be paid out of her comparatively slight recovery of benefits in this case.
 

 Disposition
 

 The judgment under appeal is reversed for further proceedings consistent with the views expressed in this opinion and for the purpose of the trial court hereafter determining, on appropriate motion therefor, the amount of fees to which petitioner is entitled under Code of Civil Procedure section 1021.5 for her attorney’s services, both at the trial and the appellate level.
 

 Potter J., concurred.
 

 Allport, J., concurred in the result.
 

 [1]
 

 In petitioner’s initial claim statement dated July 30, 1976, she had marked the box indicating that there were no reasons (including pregnancy) which would prevent her from taking full-time work. Petitioner was, in fact, then about six months’ pregnant. Her baby was apparently born about October 1, 1976. Petitioner’s loss of her former employment, though, was entirely unrelated to her pregnancy.
 

 [2]
 

 This questionnaire is filled out by the claimant’s doctor under an included executed authorization from the claimant. Question No. 5 reads as follows: “In the case of pregnancy: a. What is the expected date of delivery?_b. If the patient is presently able to work, until what date could she normally accept temporary work with your approval?_”
 

 [3]
 

 The board was advised of the existence and contents of this letter three days after petitioner filed her administrative appeal at the department’s Santa Barbara office on August 30, 1976.
 

 [4]
 

 In 1978, however, there was added to the equal employment opportunities subchapter of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) the following definition, “(k) The terms ‘because of sex’ or ‘on the basis of sex’ include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical
 
 *663
 
 conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so aifected but similar in their ability or inability to work. . . .”
 

 [5]
 

 We are aware of the existence of the federal statute, which became effective last year (26 U.S.C. § 3304(a)(12), which might possibly now preclude such inquiry. It reads: “no person shall be denied compensation under such State [unemployment compensation] law solely on the basis of pregnancy or termination of pregnancy.” But the United States Supreme Court has quite recently construed almost identical language in a statute prohibiting discrimination against the handicapped as “indicating only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context.” (See
 
 Southeastern Community College
 
 v.
 
 Davis
 
 (1979) 442 U.S. 397, 405[60 L.Ed.2d 980, 988, 99 S.Ct. 2361].)
 

 [6]
 

 The administrative law judge in his decision, which the majority of the board adopted, characterized this letter as insufficient because of its conclusionary form and its lack of factual basis. We believe, nevertheless, that it should have been accorded much greater weight. Medical opinions, particularly from one’s private physician, are normally conclusionary in form, but since there is usually no better evidence of the state of one’s health, they are normally accepted without question, particularly when, as here, there is no countervailing evidence.