[No. F003725. Fifth Dist., June 7, 1985.]

CALIFORNIA TEACHERS' ASSOCIATION et al.,
Plaintiffs and Appellants, v.
GOVERNING BOARD OF THE YOSEMITE COMMUNITY COLLEGE
DISTRICT et al., Defendants and Respondents.

Counsel

Tuttle & Tuttle and Ernest H. Tuttle III for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Robert Burton and Marybelle D. Archibald, Deputy Attorneys General, Whitmore, Kay & Stevens, Ralph D. Stern, Brad L. Fuller and M. Carol Stevens for Defendants and Respondents.ˑ

## Opinion

**BEST, J.**—The issue in this case is whether a public teacher whose claim for earned but unpaid salary is barred by the statute of limitations is likewise barred from receiving retirement service credits under the State Teachers' Retirement System. We will conclude that she is not.

### The Case

The California Teachers' Association (CTA) and Elizabeth Tye and Erma George (teachers) appeal from a judgment denying their petition for writ of mandate and complaint for declaratory relief seeking retirement benefits and service credits from their employer, Yosemite Community College District (District) and the State Teachers' Retirement System (STRS).

### The Procedural Background

#### Initial Court Proceedings

In January 1983, CTA and teachers filed a petition for writ of mandate and complaint for declaratory relief in Stanislaus County Superior Court,

alleging that the District and STRS had failed to comply with Education Code[1] sections 45025 and 22703, thereby denying teachers salary, fringe benefits and service credit.

Following the filing of responses by District and STRS, a hearing was held on March 30, 1983. The court found that CTA and teachers had failed to exhaust available administrative remedies.

### Administrative Proceedings

On or about April 6, 1983, CTA and teachers requested an administrative hearing before STRS. On or about June 6, 1983, STRS granted the request and referred the matter to its chief executive officer.

On July 17, 1983, following his review, the chief executive officer of STRS informed CTA and teachers that he had determined their request for additional service credit should be denied and that an administrative hearing would not be held because their appeal was a question of law, not disputed facts. CTA and teachers were also advised they had exhausted their administrative remedies with STRS.

### Subsequent Court Proceedings

In September 1983, CTA and teachers filed another petition for writ of mandate and complaint for declaratory relief. They reiterated their requests for fringe benefits and service credit. CTA and teachers further requested the court to take judicial notice of the proceedings in the prior action, No. 188766.

STRS filed a response contending that service credit for teachers had been properly calculated based upon reports and contributions made by District. District filed a response contending, among other things, that teachers' claims for relief were barred by Code of Civil Procedure section 338, subdivision 1.

Following a hearing, judgment was entered denying the petition for writ of mandate and declaratory relief on the ground that the relief sought was barred by the statute of limitations.

### The Facts

The facts are essentially undisputed. Teachers began teaching for the District in the early 1960's, Elizabeth Tye in 1960-1961 and Erma George at

---

[1]All statutory references are to the Education Code unless otherwise indicated.

least by the 1965-1966 school year. They both taught part time; both were paid on an hourly basis. Section 45025, in fact, required that they be paid on a pro rata basis to the full-time employees. By paying them on an hourly basis, they were substantially underpaid. District designated them permanent, or tenured, employees of District in the 1971-1972 school year. They were not advised of the change in their status and they continued to work, year after year, for District in varying amounts of time and to be paid as part-time hourly employees. In 1978, teachers learned that they had been permanent employees since 1971 and they demanded to be paid as pro rata permanent employees and provided with the benefits of such employees. District complied with their demands from that time forward. Teachers also demanded to be paid on the basis of pro rata pay from 1979 retroactively. District and teachers had numerous discussions and correspondence back and forth, and teachers had their representatives contact District trying to resolve the issue regarding their back pay and retirement pay. The issue was never resolved.

As a result of being paid hourly, as opposed to being paid on a pro rata basis as required by the Education Code, teachers lost thousands of dollars throughout the years in the form of salary.

The first action filed by teachers on January 18, 1984, was filed in excess of three years after they learned of their underpayment. Since their rights are based upon statute, teachers concede they were precluded by the statute of limitations contained in Code of Civil Procedure section 338 from obtaining backpay for salary purposes. However, at the time the first action was filed, neither teacher had retired from District.

Teachers are not entitled to retirement benefits until they retire.

The effect of District underpaying teachers by paying them on an hourly basis as opposed to a pro rata basis had a dramatic impact on their retirement benefits that they will receive. One of the key elements in determining the appropriate amount of retirement pay for any teacher with STRS is the amount of service credit (§ 24000). Service credit, or years of service, is defined in section 22700 et seq. District reported to STRS that teachers were hourly employees and sent contributions to STRS based upon an hourly formula contained in section 22703. Use of the hourly formula resulted in substantially less money being sent to STRS than was required had teachers been paid as pro rata employees and resulted in substantially less service credit being granted to teachers and, thus, ultimately less retirement benefits payable to them.

## DISCUSSION

■ We begin our discussion by noting that a teacher has a fundamental vested right in the retirement fund of the STRS to which he or she is entitled by law. (*Purdy* v. *Teachers' Retirement Board* (1980) 113 Cal.App.3d 942, 949 [170 Cal.Rptr. 360].)

### I

### ARE TEACHERS' CLAIMS FOR PROPER RETIREMENT BENEFITS BARRED BY THE STATUTE OF LIMITATIONS?

■ It is undisputed that teachers were entitled to pro rata pay pursuant to section 45025.[2] Even though the school board had determined as of 1971 that teachers were tenured employees, they did not advise teachers of the tenure until 1978 and, during that period, continued to pay teachers an hourly wage which was below the salary which teachers were actually earning. It is also undisputed that the concomitant result of the District's indefensible failure to pay teachers properly under section 45025 was an under-accounting of service credits which will adversely affect their benefits upon retirement. (§§ 22703,[3] 24000.[4]) Finally, it is undisputed that teachers were

---

[2]Section 45025 provides as follows: "Any person employed by a district in a position requiring certification qualifications who serves less than the minimum schoolday as defined in Sections 46112 to 46116, inclusive, or 46141 may specifically contract to serve as a part-time employee. In fixing the compensation of part-time employees, governing boards *shall* provide an amount which bears the same ratio to the amount provided full-time employees as the time actually served by such part-time employees bears to the time actually served by full-time employees of the same grade or assignment. This section shall not apply to any person classified as a temporary employee under Sections 44919 and 44888, or any person employed as a part-time employee above and beyond his employment as a full-time employee in the same school district." (Italics added.)

The language used in section 45025 clearly shows its requirements are mandatory and not permissive. (§ 75.)

[3]Section 22703 provides in pertinent part as follows: "Persons employed on a part-time basis, including persons employed in night schools and adult education programs, *shall receive credit for time served in the proportion that the salary earned bears to the salary which would have been earned if employed full time.* When a person is employed . . . on an hourly or daily basis, full-time employment shall be considered as one hundred seventy-five (175) days or one thousand fifty (1,050) hours if the service is confined to a school term, or two hundred sixty (260) days or one thousand five hundred sixty (1,560) hours if the service extends for a full school year. . . . The board shall make equitable adjustments for service which extends for a period greater than a school term but less than a school year." (Italics added.)

[4]Section 24000 provides in pertinent part: "Upon retirement for service which became effective after June 30, 1972, a member shall receive a retirement allowance which shall consist of:

"(a) An annual allowance payable in monthly installments, upon retirement at age 60 or over, equal to 2 percent of the final compensation for each year of *credited service.* . . ." (Italics added.)

shortchanged in credited service because they were being improperly underpaid and, therefore, they did not receive the correct number of sick leave days. Had they been paid on a pro rata basis, teachers would have received additional sick leave days which they could have accumulated and used for service credit upon retirement. (§ 22719.[5])

Teachers concede that they are not entitled to the salary that they lost because the statute of limitations had run at the time that a lawsuit was first filed in the case. District contends that when stripped to its essence, teachers' claim is for backpay even though they disguise it as a claim for retirement benefits. We disagree.

Teachers are not seeking as damages the amount that they would have received had they been properly paid. Teachers instead seek the service credits which they earned but went uncredited. These are two entirely different types of compensation to which teachers were entitled. While they both stem from the same wrong—the District's wrongful nondisclosure of teachers' true status as tenured teachers and underpayment of salary earned—the time at which the causes of action accrue is the critical point. Teachers' right to payment of salary obviously accrued at the time they earned it because that was also the time it became payable. However, as we will demonstrate, the entitlement to service credits would not accrue until teachers' retirement.

Teachers correctly contend that the trial court's holding that the statute of limitations barred teachers' claim for correct retirement benefits is erroneous.

In *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438 [326 P.2d 484], an action filed in 1955, no statutory limitation was found as to future payments from the retirement system on individuals who had been receiving pensions since before 1927. The court made it clear that even though the action could have been filed some 20 years earlier, it was not barred. (*Id.*, at p. 463.) There, the plaintiffs were either retired firemen or policemen, or widows of firemen or policemen, who had worked prior to January 1925 and 1927, respectively. All of the plaintiffs' pensions had become due or they were entitled to receive their pensions after 1925 and 1927. Anyone retiring prior to 1925 and 1927 was entitled to a fluctuating pension. The city amended its charter in 1925 and 1927 and provided for payment of

---

[5]Section 22719 provides in pertinent part: "A member shall be credited at retirement for each day of accumulated and unused leave of absence for illness or injury for which full salary is allowed that the member was entitled to the final day the member performed service for the school district . . . ."

pensions on a fixed basis for anyone who retired after 1925 and 1927, even though they began working prior to said dates.

In their complaint for declaratory relief, plaintiffs stated that they were entitled to a fluctuating pension under the city charter, rather than the fixed pension, because they began working prior to 1925 and 1927. They also sought a money judgment for the difference between the fixed and fluctuating pension. Some of the plaintiffs had been receiving their pensions for many years, and some of the plaintiffs had only recently started receiving their pensions.

Defendant city contended that plaintiffs could have sought declaratory relief in 1925 and 1927 when the charter was amended; and, thus, since three years had run from 1927, the statute of limitations barred any declaratory relief as well as any money judgment. The trial court agreed with the city's contention.

The Supreme Court, however, reversed, first quoting *Maguire* v. *Hibernia S & L Soc.* (1944) 23 Cal.2d 719, 734 [146 P.2d 673, 151 A.L.R. 1062] as follows: " 'We are of the opinion that the period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for "coercive" relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred. On the other hand, if declaratory relief is sought "before there has been a breach of the obligation in respect to which said declaration is sought," or within the statutory period after the breach, the right to such relief is not barred by lapse of time.' " (*Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d at p. 463.)

The court then held: "Here, as we have seen, the statutory limitation upon the right to sue for each pension instalment commences to run from the time when the instalment falls due. It follows that even though plaintiffs might have earlier brought suit for declaratory relief similar to that filed by the active members of the Long Beach Police and Fire Departments in the Allen case (*Allen* v. *City of Long Beach* (1955), *supra,* 45 Cal.2d 128), their failure to do so does not operate to bar their right to declaratory relief with respect to future pension payments as well as to a monetary judgment for the difference, for three years (insofar as the subject statute is concerned) prior to the filing of these actions, between the amount of the fixed and the fluctuating pensions." (*Abbott, supra,* at pp. 463-464.)

The *Abbott* case has been followed in a number of cases (see, e.g., *Abbott* v. *City of San Diego* (1958) 165 Cal.App.2d 511, 521-522 [332 P.2d 324];

*Farina* v. *Town of Emeryville* (1961) 188 Cal.App.2d 100, 105 [10 Cal.Rptr. 288]; *Pena* v. *City of Los Angeles* (1970) 8 Cal.App.3d 257, 263 [87 Cal.Rptr. 326]), including a case from this district (*Fenske* v. *Board of Administration* (1980) 103 Cal.App.3d 590, 594 [163 Cal.Rptr. 182]).

In *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 30-31 [157 Cal.Rptr. 706, 598 P.2d 866], a more recent Supreme Court case, the court stated: "As a general proposition, . . . claims for compensation due from a public employer may be said to accrue only when payment thereof can be legally compelled. For example, an ordinance or statute may lawfully provide that rights to cash compensation for overtime accrue only if time off credits are unused at retirement. Claims for such compensation therefore do not accrue *until retirement,* despite an employer's premature attempts to 'cancel' the credits. [Citations.] On the other hand, credits earned under a condition requiring that they must be compensated within a time certain, would accrue immediately upon expiration of the time described."

The above cited cases support teachers' contention that the statute of limitations is not a bar to their claim for increased service credits. Respondent District's efforts to distinguish the *Abbott* and *Longshore* line of cases is not persuasive. It is true that this case is factually different from those cases in that here, STRS relies upon actuarily determined contributions from the salaries of the employees and contributions from the employer that are invested by STRS, whereas in the cited cases there was no independent retirement system. However, there is no reason why the longstanding principles enunciated in those cases should not be applied here.

We hold that teachers' entitlement to service credits would not accrue until retirement benefits became payable upon retirement and, since service credits are dependent in part upon employer contributions, teachers' right to compel District to make additional contributions to the Teachers' Retirement Fund likewise accrues only upon retirement.

Section 22117 provides, "'Credited service' means service for which the required contributions have been paid. . . ." Section 23400 provides for the monthly contribution percentages required of the employer. Finally, section 22804 provides, "Each member of this system shall contribute to the retirement fund an amount equivalent to 8 percent of the member's compensation." STRS's duty to provide additional service credit arises only after the required contributions of the employer and employee have been paid.

STRS argues that the integrity of the system would be jeopardized if retirement benefits are paid for which the required employee and employer contributions have not been made and the investment earnings thereon re-

alized during that period of time the contributions should have been made. If STRS was a completely self-funded retirement system the argument would have considerable merit. We note, however, that the Legislature in establishing STRS provided in section 23402 that the state shall contribute annually for a period of 30 years from July 1, 1972, the sum of $135 million to the Teachers' Retirement Fund. We seriously doubt that the sums required to provide the additional pension benefits to teachers that they have rightfully earned would compromise the integrity of STRS.

District, however, should not be allowed to take advantage of its own wrong and equity would require District to make the appropriate contributions into the Teachers' Retirement Fund based upon the salary teachers earned but were not paid. District should also be required to pay into the fund that amount which the District's share of delinquent contributions would have earned had they been made at the time and in the amounts as required by law. (§ 23400 as originally enacted and as amended.)

This, however, would account for only part of the deficiency in the service credits teachers are entitled to. A portion of the service credits will be lost to the extent that teachers have not made member contributions for those years pursuant to section 22804. Of course, if teachers desire to have the full service credits they should be required to make voluntary contributions to make up the deficiency pursuant to section 22901. Although teachers were not at fault in failing to make the necessary contributions, this is part of the price they will have to pay for failing to bring their salary action within the three-year statute of limitations. To the extent that teachers do not make voluntary contributions, their service credits should be reduced proportionately from the full service credits normally due.

■ In addition to not receiving the proper service credit under section 45025, teachers contend that they are entitled to additional service credit based on accumulated sick leave. Their contention is based on section 22703 regarding part-time employment credit and section 22719 which provides, in pertinent part, "A member shall be credited at his retirement with credit for each day of accumulated and unused leave of absence for illness or injury for which full salary is allowed that the member was entitled to on the final day the member performed service for the school district . . . ."

We hold that teachers are entitled to the additional accumulated sick leave service credit. Unlike the salary which teachers were entitled to have as they earned it, even though teachers "earned" the additional sick leave while they worked as tenured employees, their right to *use* of that sick leave depended upon their being sick or injured. Since teachers could not legally compel payment for sick leave to the extent that teachers were not sick,

their claims for sick leave did not accrue. (See *Longshore* v. *County of Ventura, supra,* 25 Cal.3d at pp. 30-31.) Thus, this situation is analogous to the retirement benefits in that the statute of limitations does not run on the retirement benefits until the teachers are entitled to *have* them. In the instant case, it is more probable than not that teachers were not sick to the extent that they needed to use all of their sick leave days and, therefore, their entitlement to draw on the sick leave probably never accrued. However, there is no proof on this and it is an evidentiary question that should be resolved by the trial court.

## II

### ARE TEACHERS ENTITLED TO THEIR ATTORNEY FEES?

CTA and teachers seek an award of attorney fees pursuant to Government Code section 800, which provides in pertinent part: "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law, . . . where it is shown that the award, finding, or other determination of such proceeding was *the result of arbitrary or capricious action or conduct* by a public entity or an officer thereof in his official capacity, the complainant if he prevails in the civil action may collect reasonable attorney's fees, but not to exceed one thousand five hundred dollars ($1,500), where he is personally obligated to pay such fees, from such public entity, in addition to any other relief granted or other costs awarded." (Italics added.)

The first requisite for an award of attorney fees is that CTA and teachers must prevail in the action. However, as specified by statute, merely prevailing is insufficient. It must also be demonstrated that the public entity's action was "arbitrary or capricious."

For an action of a public official or entity to be arbitrary or capricious, that action must be found to be "lacking any reasonable basis whatsoever" (*Gunn* v. *Employment Development Dept.* (1979) 94 Cal.App.3d 658, 665 [156 Cal.Rptr. 584]), "without any rational support whatsoever" (*Marin Hospital Dist.* v. *Department of Health* (1979) 92 Cal.App.3d 442, 450 [154 Cal.Rptr. 838]), or "discriminatory and illegal" (*Olson* v. *Hickman* (1972) 25 Cal.App.3d 920, 923 [102 Cal.Rptr. 248]).

The record in this case does not warrant such a characterization of the action of the Teacher's Retirement Board or STRS. STRS's action was in strict compliance with the law and was pursuant to a legitimate evaluation

of the purpose and requirements of section 22217 and California Administrative Code, title 5, section 20520.

In denying the request for attorney fees under Government Code section 800, the court in *Von Durjais* v. *Board of Trustees* (1978) 83 Cal.App.3d 681, 688-689 [148 Cal.Rptr. 192], stated: "[T]he record discloses neither evidence of arbitrary conduct nor bad faith on the part of the Board, and merely reflects a bona fide dispute concerning interpretation of the statute governing back salary. Such showing is insufficient to justify the imposition of the statutory sanction. [Citation.]" (Fn. omitted.)

The basis for CTA's and teachers' claim for attorney fees is as follows: (1) In the original action, STRS and the other respondents urged the trial court to accept the theory that there was an adequate and available administrative remedy. This argument was made even though in such a hearing the District would not even be a party, and STRS's position has been all along that it will not grant additional service credits unless the money is sent. (2) The trial court accepted this argument and denied the writ of mandate. (3) When teachers asked respondents to provide the very administrative hearing that respondents had urged as adequate and available to the trial court in March 1983, STRS denied a hearing in July 1983 on the basis that the matter was one of law. Since the issue was just as much an issue of law in March as it was in July 1983, teachers feel that the conduct of respondents was arbitrary and capricious entitling them to attorney fees.

Teachers' contention is without merit. First of all, teachers did not prevail in their action for back salary. Second, the record does not establish arbitrary conduct and bad faith on the part of STRS. Instead, it appears the record merely reflects a bona fide dispute concerning entitlement to service credit. Moreover, as emphasized by the judge in his decision in the initial court proceedings, "No case needs to be cited for the well-established principle of law that administrative remedies must be exhausted prior to seeking court action."

STRS granted teachers the opportunity for administrative review. No additional facts were submitted by teachers. Their cases were reviewed and STRS determined that, based on the available information, no additional credit could be granted and the dispute was a question of law, not to be resolved by an administrative hearing. Thus, an insufficient showing of arbitrary or capricious action on the part of respondents to warrant an award of attorney fees has been made.

The judgment is reversed and the matter is remanded to the trial court for further proceedings in accordance with the views expressed in this opinion.

Woolpert, Acting P. J., and Hamlin, J., concurred.