[L. A. No. 26071. In Bank. May 15, 1962.]

TONY J. ADLER et al., Plaintiffs and Respondents, v. CITY OF PASADENA et al., Defendants and Appellants.

[L. A. No. 26070. In Bank. May 15, 1962.]

MARY D. BOUSLOG et al., Plaintiffs and Respondents, v. CITY OF PASADENA et al., Defendants and Appellants.

Wendell R. Thompson, City Attorney, Fred R. Metheny and David E. Golay, Assistant City Attorneys, William L. Mock and Donald B. Hagler, Deputy City Attorneys, for Defendants and Appellants.

James C. Sheppard, William A. Masterson, John D. Hussey and Sheppard, Mullin, Richter & Hampton as Amici Curiae on behalf of Defendants and Appellants.

Kenneth Sperry, David Goldman and John L. Kaesman for Plaintiffs and Respondents.

SCHAUER, J.—In these two pension cases, consolidated for trial and for appeal, judgments were entered awarding plaintiffs in both cases recovery of sums constituting the

difference between "fixed" and "fluctuating" monthly pension instalments, and in the *Adler* case recovery of certain salary deductions as well. Defendants[1] appeal from those portions of the judgments which allow recovery based on fluctuating pension payments accruing, and of salary deductions made, more than six months prior to the filing of plaintiffs' claims with defendant city. As hereinafter appears, we have concluded that recovery should be limited to such six-month period, and that the judgments must therefore be reversed.

In the *Adler* case plaintiffs are retired members of the Police or of the Fire Department of defendant City of Pasadena, and in the *Bouslog* case plaintiffs are the widows of deceased retired members of such departments.[2] All of these city firemen and policemen became such during a period of time when the charter of defendant city provided for monthly pension payments on a fluctuating basis (i.e., based upon salaries currently being paid from time to time) rather than in fixed amounts determined at the time of retirement. In 1935 by charter amendment (Stats. 1935, p. 2320) certain changes were made in the pension system, including a change from the fluctuating to the fixed method of computing pension payments and the requirement of employe contributions by way of deductions from salary. In 1958 this court ruled in *Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 445, 447-455 [1-14] [326 P.2d 484], that charter amendments by which fixed payment pensions were substituted for fluctuating were unreasonable and a breach of contract as applied to employes who became such prior to date of the amendments.

In 1959 plaintiffs in the cases at bench, who had been receiving monthly pension payments in fixed amounts, filed with the city claims for the difference between such payments and the larger payments which would have been received under the fluctuating method, and also for the return of salary deductions and interest thereon. The claims were denied, and plaintiffs thereupon brought these actions. The judgment of the trial court awarded to plaintiffs in both cases amounts found to be the difference between pensions based on the fixed and the fluctuating method and limited recovery

---

[1]Named as defendants are the City of Pasadena, the Retirement Board of the city's Fire and Police Retirement System and the members of such board, the city controller, and the city treasurer.

[2]In this opinion the term "plaintiffs" will include decedents whose personal representatives are appearing.

to monthly payments accruing during the three-year period prior to the filing of plaintiffs' claims, pursuant to the limitation provisions of section 338 of the Code of Civil Procedure. In the *Adler* case plaintiffs were also awarded recovery of *all* salary deductions together with interest. These appeals by defendants followed.

As ground for reversal defendants contend that the trial court erred in failing to apply to plaintiffs' claims the six-month claims provision of the city charter of Pasadena.

### PAST DUE PENSION PAYMENTS

Section 12 of article 11 of the Pasadena City Charter provides in pertinent part that all claims against the city other than for damages "shall be presented within six months after the last item of the account or claim accrued." (Stats. 1933, p. 2783.) This language is identical with that of the city charter provision which, in *Abbott* v. *City of Los Angeles* (1958), *supra,* 50 Cal.2d 438, 464-466 [30], we held limited plaintiffs' recovery for past due pension payments to those which accrued within six months prior to the time the respective plaintiffs presented claims therefor. Plaintiffs' contention that their various applications for retirement or for pensions, and conformance otherwise with charter provisions regulating the payment of pensions, either constituted compliance with, or excused them from following, the six-month claims provisions has likewise been determined to the contrary by *Abbott.* We there held that "the better view, and one in harmony with the purpose of limitations provisions is that where, as in these cases, status as a pensioner is established, then the pensioner who asserts a right to larger payments than those received must put the defendants upon notice by presentation of a claim to that specific effect." (P. 466 [30] of 50 Cal.2d.) This holding also disposes of plaintiffs' further suggestion that the claims provisions do not apply because the charter likewise provides the procedure for the obtaining and the payment of pensions, and places administration of the pension system in the hands of defendant retirement board, successor to the former Fire and Police Pension Board.

Plaintiffs point also to the further language of the charter claims provision which declares that "No suit shall be brought upon any claim for money or damages, whether founded on *tort or contract,* against the City of Pasadena, or any department thereof, until a demand for the same has been presented

as provided herein or in any ordinance herein authorized, and rejected in whole or in part'' (art. 11, § 12; Stats. 1933, p. 2783; italics added), and argue that their claims are based upon an obligation created by statute (i.e., the charter provisions dealing with pensions) rather than on tort or contract, and therefore do not fall within the six-month claims provision. This point is likewise without merit. ■ This court has repeatedly declared—and it must be respected as established law—that an employe's right to be protected against unreasonable modifications of a pension system is a ''vested *contractual*'' right. (Italics added; see *Abbott* v. *City of Los Angeles* (1958) *supra*, 50 Cal.2d 438, 447 [1], 449 [3], 462 [22b], and cases there cited; *Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [1] [287 P.2d 765].)

■ Plaintiffs' further suggestion that the six-month claim provision of the city charter conflicts with state law is also foreclosed by our holding in the *Abbott* case (pp. 464-467 [30] of 50 Cal.2d), and as well by that in *Dillon* v. *Board of Pension Comrs.* (1941) 18 Cal.2d 427, 431-432 [7] [116 P.2d 37, 136 A.L.R. 800], and by the fact that the new claims provisions enacted in 1959 (Gov. Code, §§ 700-730) were not in effect when these actions were commenced, or, of course, when plaintiffs' claims were filed with defendant.

■ Plaintiffs next contend that ''the trial court made specific findings from which an inference or conclusion of an estoppel upon the part of defendants to contend that . . . plaintiffs' causes of action . . . [are] barred by'' the six-month claims provision of the city charter ''may be properly drawn.'' In the first place, however, the trial court made no express finding or conclusion that defendants are estopped to rely upon the charter claims requirements, and it appears plain that such a conclusion is not compelled by the findings the court did make, which insofar as pertinent are set forth in the margin.[3]

---

[3]The findings upon which plaintiffs rely read as follows:
''. . . at all times prior to the month of June, 1958 [when the opinion in the *Abbott* case was filed] . . . plaintiffs relied upon the defendants . . . to keep them informed concerning their pension rights and . . . on numerous occasions the defendant Board . . . represented to plaintiffs . . . that they were receiving the full amount of pension benefits to which each was legally entitled, and . . . no party plaintiff had any reason to suspect that he was not receiving . . . [such] full amount . . . until so informed by his present attorneys shortly prior to the filing of the complaint herein. That at all times prior to June of 1958, the Retirement Board of the defendant City and its employees adopted a paternalistic attitude toward the plaintiffs . . . in the matter of assisting them

As pointed out by defendants, none of the matters related in such findings indicates that defendants acted in an unconscionable or unreasonable manner or that, either intentionally or otherwise, they set out to, or did, take unfair advantage of plaintiffs. Rather, it appears that until the decision in the *Abbott* case all of the parties reasonably believed that the change from the fluctuating to the fixed method of computing pension payments was binding upon these plaintiffs. Further, no showing is made that plaintiffs were lulled by defendants' representations into believing that the charter claims provisions would not be relied upon if plaintiffs should assert a right to fluctuating rather than fixed pensions. Nor were plaintiffs prevented by defendants from seeking independent advice or counsel or from bringing earlier court action to establish their rights. The cases relied upon by plaintiffs are clearly distinguishable. Thus, in *Tyra* v. *Board of Police etc. Comrs.* (1948) 32 Cal.2d 666, 670-671 [197 P.2d 710], defendants and their attorneys told plaintiff, who had suffered physical disability in the course of discharging his duties, that the workmen's compensation benefits he was receiving were "in lieu of and in place of the [pension] benefits provided in section 187 of the [city] Charter," whereas actually there was no such provision in the charter. In *Farrell* v. *County of Placer* (1944) 23 Cal.2d 624, 626-628 [1-3] [145 P.2d 570, 153 A.L.R. 323], defendants advised plaintiff, who had suffered personal injuries in an automobile accident, not to employ an attorney, that it would be best to settle the case with defendants' agent directly, and that it would be satisfactory with defendants for plaintiff to wait until she knew the extent of her injuries before stating the amount she claimed or making a settlement. *Lorenson* v. *City of Los Angeles* (1953) 41 Cal.2d 334, 340-341 [3] [260 P.2d 49],

---

in obtaining their pension rights and keeping them informed with respect thereto, and that plaintiffs . . . had implicit confidence in the integrity of said pension board and had a right to assume that each was receiving the full amount of pension benefits to which each was legally entitled. That at all times prior to the filing of defendants' answer herein, the Retirement Board . . . had assumed the responsibility of administering the pension fund and of paying such sums as were legally due to all retired members of the Police and Fire Departments of the City of Pasadena . . . and that said defendant Board had adopted and provided a complete set of printed forms for the use of all members including each party plaintiff in applying for pension benefits, and that defendants customarily paid and made adjustments in the pension accounts of the various retired members without requiring the filing of any further claim or demand. . . .''

*Benner* v. *Industrial Acc. Com.* (1945) 26 Cal.2d 346, 348-350 [1-3] [159 P.2d 24], and other cases cited by plaintiffs are likewise distinguishable upon their facts, and no useful purpose would be served by further elaboration here. Plaintiffs have failed to establish that this is any such exceptional case as would justify permitting the doctrine of estoppel to be invoked to bar reliance by defendants upon the claims provisions of the charter. (See *Cooke* v. *Ramponi* (1952) 38 Cal.2d 282, 286-287 [3, 4] [239 P.2d 638]; *County of San Diego* v. *California Water etc. Co.* (1947) 30 Cal.2d 817, 825 [4] [186 P.2d 124, 175 A.L.R. 747]; see also *California Cigarette Concessions* v. *City of Los Angeles* (1960) 53 Cal.2d 865, 869-871 [3-7] [3 Cal.Rptr. 675, 350 P.2d 715].)

## Salary Deductions in Adler Case

With respect to the recovery of salary deductions which the trial court awarded in the *Adler* case without limitation as to time, plaintiffs alleged and the trial court held that all such deductions from the date initiated in 1935 (pursuant to the charter amendments of that year) constituted trust funds held for plaintiffs by defendants. On this appeal plaintiffs contend that the funds deducted constitute the corpus of a resulting trust which arose upon failure of an express trust of which they are the beneficiaries, and rely on the rule that "ordinarily the trustee of a resulting trust is considered a voluntary trustee and that the statute of limitations does not begin to run in favor of a voluntary trustee until he repudiates the trust." (*Davenport* v. *Davenport Foundation* (1950) 36 Cal.2d 67, 75 [5] [222 P.2d 11].) For this further reason, urge plaintiffs, neither the city charter claims provisions nor the statutes of limitation set forth in the Code of Civil Procedure apply to the salary deductions they here seek to recover.

As already stated, defendants have appealed from only those portions of the judgment awarding recovery without limitation to the six-month period specified by the charter claims provisions. For this issue it may be assumed without deciding that the salary deductions were improperly made because in contravention of plaintiffs' contractual rights which arose at the time they entered the employ of defendant city prior to the 1935 charter amendments. We are persuaded, however, that under no tenable theory of the law has it been shown that a voluntary trust relationship exists between the parties which would bar application of the claims provisions

with respect to these funds, or that any such relationship has ever been either acknowledged, or repudiated, by defendants.

■ Section 14 of article 6 of the charter of defendant city, as amended in 1935 (Stats. 1935, pp. 2320-2336), declares that persons "who shall be members of the Fire or Police Departments on the effective date hereof shall become members of the Retirement System upon such date." Under subdivisions (e) and (f) of section 14 provision is made for credit to the individual account of each member of the system, of deductions made from the salary of such member, and for a refund thereof, with interest, to a member who is separated from the service of the city through any cause other than death or retirement. However, the obligation of the city with respect to the payment of a pension to an employe is not limited by the amount credited to his individual account; rather, section 9 and subdivision (d) of section 14 of article 6 provide for contribution by defendant city also, with the amounts contributed by employe and by city to be determined from time to time upon an actuarial basis, paid into the Retirement Fund, and administered by defendant Retirement Board. Thus, as commented by the court in *Goodwin* v. *Board of Trustees* (1946) 72 Cal.App.2d 445, 450 [1] [164 P.2d 512], in rejecting a trust theory advanced by that plaintiff, "This retirement system, unlike some such systems, was not based on the theory that contributions paid by each employee were to be paid into a separate individual fund or account for him, and upon reaching retirement age, matched by the governmental body involved, and that fund then used to pay that retirement allowance. Here the contributions of the firemen were paid into a fund designated as the Firemen's Relief and Pension Fund. The city expressly assumed the liability to keep such fund solvent. Such a plan does not limit the retirement allowance to the fund, but the obligation to pay the retirement allowance, once it vests, becomes a general obligation of the governmental agency involved. (*England* v. *City of Long Beach* [1945] 27 Cal.2d 343 [163 P.2d 865].)" It is thus apparent that the retirement fund here, including the portion thereof contributed by employes, does not constitute the corpus of an express trust of which any employe is a specific beneficiary.

■ Further, the elements of an express trust are pointed out thusly in *Bainbridge* v. *Stoner* (1940) 16 Cal.2d 423, 428 [2, 3] [106 P.2d 423], "But having no title to the property

in his charge, Stoner was not an express trustee of it as a director or officer of the corporation. To create an express trust there must be an explicit declaration of trust followed by an actual conveyance or transfer of property to the trustee. [Citations.]'' In the case at bench, of course, neither was or is there an explicit declaration of trust nor a conveyance or transfer of property to defendant Retirement Board, which plaintiffs attempt to cast in the role of trustee. Rather, the deductions from plaintiffs' salaries were made under a claim of right and are held by defendant city treasurer, in the fund known as the Retirement Fund.

▆▆▆ The circumstances under which a resulting trust will arise are likewise declared in *Bainbridge* v. *Stoner* (1940), *supra*, at page 428 [4, 5] : ''Nor did he become a resulting trustee when he [subsequently, and through alleged fraud] acquired the title to the corporation's property. That relationship arises only where one has, in good faith, acquired title to property belonging to another. Under such circumstances, the law implies an obligation on the part of the one in whom title has vested to hold the property for the benefit of the owner, and, eventually to convey to the owner. [Citation.]
▆▆▆ A resulting trust is created when, because of some invalidity such as lack of a definite purpose or legality, an express trust fails, or where property is purchased and title taken in the name of one person but the consideration is paid by another, or where after a trust is fully performed, there is property remaining in the hands of the trustee. It is one implied by law to carry out the intention of the parties and the trustee has no duties to perform, no trust to administer, and no purpose to carry out except the single one of holding or conveying to the beneficiary. [Citations.]''

Thus, even if plaintiffs were correct in their argument that an express trust had been created with the sums deducted from their salaries and paid into the Retirement Fund under provisions of the 1935 amendments to the city charter, it is apparent that any such trust has not failed. Actually, the deductions are being used for the very purpose—payment of pensions to retired employes or their dependents—for which they were made.

Nor would any such trust lack legality. Plaintiffs' reliance upon *Davenport* v. *Davenport Foundation* (1950), *supra*, 36 Cal.2d 67, on this point is misplaced. There an express irrevocable written trust created by an intended trustor and with a specifically named trustee, was agreed by the

parties (p. 72 [1] of 36 Cal.2d) to be "invalid to the extent that under its terms the trustees may apply the income or corpus to noncharitable purposes after the lapse of the statutory period of lives in being or 25 years from its creation. ( Civ. Code, §§ 715, 716; *Estate of Sutro,* 155 Cal. 727, 734-736 [102 P. 920]; see, Restatement, Trusts, § 398.)" As against the trustee's plea of the statute of limitations it was held that "To the extent that the express trust may be found to have failed because of an invalid restraint on alienation . . . [the trustee] will have held the legal title to the property on a resulting trust for the trustor and his heirs," and that "With respect to the statute of limitations, he is treated as a voluntary trustee so long as he does not repudiate the trust. [Citations.] Any other rule would allow a trustor to evade prohibitions against restraint of alienation and perpetuities by establishing an invalid trust and merely refraining from attacking it until the statute of limitations had run." (P. 75 [5] of 36 Cal.2d.)

We are confronted with no such situation in the case at bench. Even if an express trust had ever been created in favor of plaintiffs here, it was plainly *not invalid* insofar as concerns any attacks here presented by plaintiffs. As has been hereinabove pointed out, plaintiffs' claim to pension payments under city charter provisions which existed at the time they entered the city's employ (i.e., before the 1935 amendment changing from the fluctuating to the fixed method of computing pensions, and initiating the requirement of contributions from employes) and to a return of their contributions made pursuant to the 1935 charter amendments, is grounded upon their vested contractual right to be protected against unreasonable modifications of the pension system as applied to themselves. There is nothing in the fixed method of computation, as such, or in the requirement of contributions by employes to a pension fund system, which is invalid as in violation of any statute or of either state or federal Constitution. The fact that contractual rights are protected by the due process and other pertinent clauses of the Constitution does not alter this situation. Thus no invalidity is shown with respect to plaintiffs' hypothesized express trust, from which a resulting trust would follow. The position of plaintiffs is that of employes seeking to enforce contractual rights, and not of beneficiaries of either an express or resulting trust.

In summary, the salary deductions which plaintiffs here seek to recover were, as plaintiffs concede, made under a

mistake of law as to the effect of the 1935 charter amendments upon their contractual rights as city employes. The same mistake of law resulted in the payment to plaintiffs of pensions computed upon a fixed rather than a fluctuating basis. ■ Plaintiffs' causes of action asking payment of increased past due pension instalments as well as for reimbursement of salary deductions seek to recover money due for breach of an employment contract and are actions at law. (*Abbott* v. *City of Los Angeles* (1958), *supra*, 50 Cal.2d 438, 462 [22b].) It follows that the six-month claims provisions of the city charter apply to the salary deductions, as they do with respect to past due pension payments, and here bar recovery of any such deduction made more than six months prior to the filing of claims therefor by the respective plaintiffs. Plaintiffs concede that all salary deductions were made prior to the commencement of such six-month period.

The judgments are reversed with directions to the trial court to enter judgments in favor of plaintiffs in accordance with the conclusions declared in the foregoing opinion, if the court finds that it can do so upon the present record, and, if not, then the court is directed to take such further evidence as may be necessary to compute the amounts due to each plaintiff, to make such computations, and thereupon to enter judgments accordingly.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.