[No. D048156. Fourth Dist., Div. One. May 22, 2007.]

GARY CANOVA et al., Plaintiffs and Appellants, v.
TRUSTEES OF IMPERIAL IRRIGATION DISTRICT EMPLOYEE
PENSION PLAN et al., Defendants and Respondents,

## COUNSEL

Stanley, Mandel & Iola, Matthew J. Zevin; Butterfield Schechter, Marc S. Schechter and Susan L. Northup for Plaintiffs and Appellants.

Howrey, Simon Arnold & White, John E. McDermott, Patrick McDonough, Michael L. Turrill; Horton Knox Carter & Foote, Jeffrey M. Garber, Frank A. Oswalt and Vance Taylor for Defendants and Respondents.

## OPINION

**McINTYRE, J.**—Gary Canova, Virginia Canova, Ronald Shelton, Michael Hodges and Jimmie Sexton (collectively Plaintiffs), current or former employees of Imperial Irrigation District (the District), appeal a judgment entered in favor of the District, the Trustees of Imperial Irrigation District Employee Pension Plan and the Board of Directors of the Imperial Irrigation District Employee Pension Plan (collectively Defendants) after the trial court granted Defendants' motion for summary judgment based on Plaintiffs' failure to comply with the claim filing requirements of the Government Claims Act (Gov. Code, § 900 et seq. (the Claims Act), all undesignated statutory references are to this code).

In this case, we conclude that neither declaratory nor injunctive relief was available and that mandamus could not be used to invalidate changes made to Plaintiffs' retirement plan because they had an adequate monetary remedy and were required to file a timely claim. Mandamus, however, may be appropriate to attempt to invalidate Defendants' termination of Plaintiffs' defined benefit plan and compel Defendants to perform their contractual duties under the defined benefit plan as this claim did not seek money or damages and did not require the filing of a government claim. Accordingly, summary judgment of the entire action based on Plaintiffs' failure to comply with the Claims Act was improper.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1969, the District implemented the Imperial Irrigation District Employee Pension Plan (the Pension Plan) as a defined benefit plan whereby benefit payments were only due and payable to participants upon retirement. Benefit amounts under the Pension Plan did not become fixed until a participant's retirement or separation from employment or the termination of the Pension Plan. Before 1995, employees participating in the Pension Plan received a monthly annuity upon retirement, with no lump sum option available. In 1995, the District amended the Pension Plan to add a lump sum distribution

option in addition to the annuity; lump sum benefits were paid subject to a 30-year variable Treasury Bond interest rate, known as the GATT (General Agreement of Tariffs and Trade) rate.

Effective July 1, 1999, the District modified the Pension Plan to: (1) delete the variable GATT rate and adopt a fixed 7 percent interest rate for employees choosing the lump sum option upon their retirement (the Rate Amendment) and (2) add a new defined contribution plan (the Contribution Plan), commonly known as a 401k or 401(a) plan, which did not provide specific dollar benefits upon retirement. Employees hired after July 1, 1999 had to participate in the Contribution Plan.

Effective June 30, 2001, the District terminated the Pension Plan and gave participating employees the choice of transferring the lump sum value of their accrued benefits, plus an equity adjustment, into the Contribution Plan or receiving a deferred annuity payable upon retirement or separation. Employees choosing the Contribution Plan received an employer contribution based on a percentage of their monthly base salary and could elect to contribute additional pretax dollars. Participants in the Contribution Plan had 10 investment options to choose from and could only withdraw funds upon retirement or termination of their employment.

Plaintiffs all chose to have their accrued benefits from the Pension Plan rolled directly into the Contribution Plan. In December 2002, Plaintiffs filed their original complaint, a proposed class action, alleging causes of action for breach of contract, accounting and breach of fiduciary duty based on the 1995 change, the Rate Amendment and the equity adjustment made after their accrued benefits were transferred into the Contribution Plan. The trial court sustained Defendants' demurrer to the complaint based on Plaintiffs' failure to properly comply with the Claims Act although it allowed Plaintiffs leave to amend to seek nonmonetary relief. Plaintiffs filed a government claim on February 6, 2003, but the claim was denied as untimely and they did not seek leave to present a late claim.

After more law and motion proceedings, Plaintiffs filed a fourth amended complaint in April 2005, seeking a writ of mandate or, alternatively, alleging breach of contract and impairment of contract in violation of the contract clause of the California Constitution (Cal. Const., art. I, § 9). It identifies two proposed classes: those employees who received a lump sum distribution based on the Rate Amendment and employees who had their Pension Plan benefits rolled into the Contribution Plan using a 2 percent equity adjustment, rather than a 4.5 percent equity adjustment. The breach of contract cause of action alleges that Defendants violated a contractual duty by adopting the Rate Amendment, and the contractual impairment claim asserts that Defendants' adoption of the Rate Amendment, termination of the Pension Plan and

creation of the Contribution Plan were unreasonable and violated their ministerial duty under the contract clause of the California Constitution.

Plaintiffs allege that monetary damages would not provide adequate relief because their retirement benefits could not be restored to proper levels without forcing Defendants to take a number of actions in the course of their official duties. Accordingly, Plaintiffs seek specific performance, injunctive or declaratory relief or mandamus and allege that compliance with the Claims Act was not required because they are not seeking "money or damages" or, alternatively, to the extent the action is deemed to seek money or damages, that such relief is secondary to the equitable relief sought.

The prayer for relief requests that the Rate Amendment be invalidated, the equity adjustment be recalculated and appropriate transfers be made into the Contribution Plan account of each Plaintiff. Alternatively, Plaintiffs seek a writ of mandate declaring the Rate Amendment and rollover into the Contribution Plan invalid and an order requiring Defendants to perform their contractual duties under the Pension Plan.

Defendants moved for summary judgment on the ground the action was one for money or damages and was barred based on Plaintiffs' failure to properly comply with the Claims Act. The trial court granted the motion, concluding that the action was primarily one for damages and even assuming Plaintiffs were entitled to equitable relief, the only result would be a present payment of money for Plaintiffs' direct benefit. It also concluded that Plaintiffs' claims accrued on June 30, 2001, when Defendants terminated the Pension Plan, and all claims were barred based on Plaintiffs' failure to comply with the Claims Act. Plaintiffs timely appealed.

### DISCUSSION

Defendants moved for summary judgment, asserting that Plaintiffs' claims, although cast as ones for mandamus, declaratory or injunctive relief, actually sought monetary damages and were subject to the Claims Act. The trial court agreed and also concluded that Plaintiffs were not entitled to a writ of mandate or declaratory relief. The question before us is whether Plaintiffs' failure to timely file a government claim precludes them from pursuing this action. Although this issue comes to us on a motion for summary judgment, we need not engage in the traditional summary judgment analysis because the parties do not dispute the material facts underlying this issue.

As explained below, we agree that declaratory or injunctive relief is not available and that mandamus cannot be used to invalidate the Rate Amendment or compel recalculation of the equity adjustment because Plaintiffs had an

adequate remedy at law via money damages and they were required to file a timely claim. Mandamus, however, may be appropriate to attempt to invalidate the rollover and compel Defendants to change the retirement plan back to the Pension Plan. This claim is not one for money or damages and did not require the filing of a government claim. Accordingly, summary judgment of the entire action based on Plaintiffs' failure to comply with the Claims Act was improper.

■ Under the Claims Act, no suit for "money or damages" may be brought against a public entity until a written claim has been presented to the entity and the claim either has been acted upon or is deemed to have been rejected. (§§ 905, 945.4.) The purpose of the claims statutes is to: (1) provide a public entity with sufficient information to allow it to thoroughly investigate the matter; (2) facilitate settlement of meritorious claims; (3) enable a public entity to engage in fiscal planning; and (4) to allow a public entity to avoid similar liability in the future. (*TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 742 [5 Cal.Rptr.3d 408].) The Claims Act does not apply, however, to nonpecuniary actions, "such as those seeking injunctive, specific or declaratory relief." (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1081 [195 Cal.Rptr. 576].) Although it is generally accepted that the Claims Act applies to contract claims, this issue is currently before the California Supreme Court. (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1153, fn. 8 [52 Cal.Rptr.3d 209], citing *City of Stockton v. Superior Court*, review granted Feb. 1, 2006, S139237.)

■ Plaintiffs contend the Claims Act did not apply because their action sought mandamus relief, not money or damages. In determining whether the Claims Act applies, the critical question is whether the recovery of money or damages was the primary purpose of Plaintiffs' claims. Where the primary purpose of a mandamus action is monetary relief, the mandatory requirements of the Claims Act apply. (*Loehr v. Ventura County Community College Dist.*, supra, 147 Cal.App.3d at pp. 1081–1082; *Baiza v. Southgate Recreation & Park Dist.* (1976) 59 Cal.App.3d 669, 673–674 [130 Cal.Rptr. 836].) In contrast, mandamus actions seeking to compel performance of a mandatory duty, statutory duty or ministerial act may not be subject to the Claims Act if they do not seek money or damages. (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1125–1126 [61 Cal.Rptr.2d 207] [mandamus action to enforce mandatory duty regarding future funding of retirement system was not one for money or damages]; *County of Sacramento v. Lackner* (1979) 97 Cal.App.3d 576, 587–588 [159 Cal.Rptr. 1] [mandamus action to compel state to disburse funds in the manner provided by the Medi-Cal statutes (Welf. & Inst. Code, § 14000 et seq.) was not one for damages, but to compel by ministerial act the release of funds]; *Forde v. Cory* (1977) 66 Cal.App.3d 434, 436–438 [135 Cal.Rptr. 903] [mandamus proceeding to compel state officer to pay lump sum death benefit on behalf of judge who

died before retirement was a suit to compel performance of express statutory duty, not a money action, and thus was exempt from the government claim requirement].)

Plaintiffs assert that Defendants' adoption of the Rate Amendment and use of the incorrect equity adjustment breached Defendants' contractual obligations and caused the wrong sums to be credited into their individual accounts. They request that the Rate Amendment be invalidated, the equity adjustment recalculated, and appropriate transfers be made into their individual Contribution Plan accounts.

█ To establish liability for breach of contract, a plaintiff must establish the existence of a contract, the plaintiff's performance, the defendant's breach, and damages. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388 [272 Cal.Rptr. 387].) At the time of the rollover, Defendants used the Rate Amendment and equity adjustment to determine the amount to be credited to each of Plaintiffs' separate Contribution Plan accounts. The breach occurred when Defendants allegedly failed to credit the correct amount into each separate account thus causing Plaintiffs' damage and allowing them to sue at that time. When each Plaintiff later retired or terminated his or her employment, Defendants' obligation was to pay the amounts *previously* credited to a particular account. No new cause of action would accrue to Plaintiffs upon their retirement or termination of employment.

Although the operative complaint does not directly ask for money or damages, it seeks a transfer of additional funds into the Contribution Plan accounts of each plaintiff. This is a form of monetary relief that would fully compensate Plaintiffs for Defendants' alleged improper modifications and render any equitable relief superfluous. Accordingly, Plaintiffs' claim was one for breach of contract and they cannot avoid the government claim filing requirement by recasting it as one for mandamus.

█ Plaintiffs' allegation that the modifications violated a ministerial duty do not change our conclusion. Even assuming Defendants had such a duty, mandamus is inappropriate where, as here, there is an adequate remedy at law. (Code Civ. Proc., § 1086; see, e.g., *Wenzler v. Municipal Court* (1965) 235 Cal.App.2d 128, 133–134 [45 Cal.Rptr. 54] [mandate does not lie to compel county to refund fine paid for violation of unconstitutional ordinance, since no showing was made civil action for refund was inadequate].)

To avoid this result, Plaintiffs contend they could not possibly be seeking money or damages because they were all active employees when they

initiated this action; accordingly, they could not compel monetary payments from their retirement plan and could only pursue claims for equitable relief until their retirement.

They cite *Kern v. City of Long Beach* (1947) 29 Cal.2d 848 [179 P.2d 799] (*Kern*), *Dillon v. Board of Pension Commissioners of City of Los Angeles* (1941) 18 Cal.2d 427 [116 P.2d 37] (*Dillon*) and *Dryden v. Board of Pension Commissioners of City of Los Angeles* (1936) 6 Cal.2d 575 [59 P.2d 104] (*Dryden*) for the proposition that a cause of action for money or damages does not accrue in the context of pension benefits until an individual can actually collect the benefits. However, these cases all involved the use of mandamus to compel pension payments. (*Kern, supra,* 29 Cal.2d at p. 850; *Dillon, supra,* 18 Cal.2d at pp. 427–432; *Dryden, supra,* 6 Cal.2d at p. 577.) Here, Plaintiffs are not seeking to collect pension benefits wrongfully withheld; rather, they are seeking to invalidate one-time changes (the Rate Amendment and equity adjustment) made to their retirement plan that reduced the amount of money they would have otherwise been entitled to receive.

Additionally, the "continuing accrual" cases cited by Plaintiffs are of no assistance because they are not suing to collect future pension installments, a situation in which each missed or improper installment would constitute a new breach. (*Dryden, supra,* 6 Cal.2d at pp. 580–581 [because right to pension payments is a continuing one, the fact petitioner's claims for past and accrued pension payments may be barred based on failure to file a timely claim does not mean petitioner is without means to enforce the right to present and future pension payments]; *Adler v. City of Pasadena* (1962) 57 Cal.2d 609, 613–614 [21 Cal.Rptr. 579, 371 P.2d 315] [city charter provision that all claims against a city, other than for damages, must be presented within six months after the last item of the account or claim accrued limited the plaintiffs' recovery for past-due pension payments to those that accrued within six months prior to the time the respective plaintiffs presented claims for them]; *Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 463 [326 P.2d 484] [the statutory time limitation upon the right to sue for each pension installment commences to run from the time that that installment falls due]; *Abbott v. City of San Diego* (1958) 165 Cal.App.2d 511, 522 [332 P.2d 324] [same]; see also *Green v. Obledo* (1981) 29 Cal.3d 126, 141 [172 Cal.Rptr. 206, 624 P.2d 256] [governmental entity has a continuing obligation to pay welfare benefits pursuant to law and each deficient payment constitutes a separate violation triggering the running of a new period of limitations].)

Plaintiffs rely on *Longshore v. County of Ventura* (1979) 25 Cal.3d 14 [157 Cal.Rptr. 706, 598 P.2d 866] (*Longshore*) and *California Teachers' Assn. v. Governing Board* (1985) 169 Cal.App.3d 35 [214 Cal.Rptr. 777] (*CTA*) for

the proposition that a cause of action for money or damages does not accrue until such time that an employee can actually compel direct payment of monetary benefits to himself or herself. These cases are distinguishable and do not support Plaintiffs' argument that they could only pursue claims for equitable relief pending their retirement.

*Longshore* involved the employees' right to compensation for services performed (overtime credits), not pension rights, and the timeliness of those claims could not be resolved because it turned on when certain ordinances made the overtime credits compensable (either at retirement or within a certain time after the services were performed). (*Longshore, supra*, 25 Cal.3d at pp. 29–31.) The court, however, could not conclude that the limitations period had passed as to any or all of the possible compensation claims because the complaint did not specify under which ordinances the overtime credits were claimed to have been earned, and even if some claims had accrued, current employees would still be entitled to declaratory relief regarding the validity of an ordinance purporting to cancel unused credits. (*Id.* at p. 31.)

Similarly, *CTA, supra*, 169 Cal.App.3d 35 does not advance Plaintiffs' position. In *CTA*, public teachers sued their employer to recover backpay and retirement service credits. (*Id.* at p. 38.) The trial court denied their petition for a writ of mandate and complaint for declaratory relief on the ground the claims were barred by the statute of limitations. (*Id.* at p. 39.) The appellate court agreed in part, concluding that the statutory claims for backpay were untimely because the action was filed more than three years after the teachers learned of the underpayment. (*Ibid.*) Because entitlement to service credits was dependent in part on employer contributions and the teachers' right to compel their employer to make additional contributions accrued only upon retirement, the appellate court held that the teachers' entitlement to service credits would not accrue until their retirement benefits became payable, i.e., at retirement. (*Id.* at p. 44.)

 Here, Plaintiffs' request to invalidate the Rate Amendment and recalculate the equity adjustment, although cast as a claim for mandamus, actually seeks money or damages. Accordingly, Plaintiffs were required to comply with the Claims Act, which specifies that claims "relating to" a cause of action for personal injuries must be presented within six months after accrual of the cause of action, while claims "relating to any other cause of action" must be presented within one year after accrual. (§ 911.2.) A cause of action accrues on the date which it would be deemed to have accrued under the applicable statute of limitations and is generally the date the plaintiff incurred injury as a result of the defendant's alleged wrongful act or omission. (§ 901; *Loehr v. Ventura County Community College Dist., supra*, 147 Cal.App.3d at p. 1078.)

At the latest, Plaintiffs' claims to invalidate the Rate Amendment and recalculate the equity adjustment accrued at the time of the rollover on June 30, 2001. Plaintiffs, however, did not file their government claim until February 6, 2003, more than one year after their claims accrued, and they did not seek leave to present a late claim. These claims are thus barred based on Plaintiffs' failure to comply with the Claims Act.

■ Although not argued by Plaintiffs, we note that the Legislature has enumerated 12 types of claims against local public entities that are excepted from the mandatory filing requirement (§ 905, subds (a)–(*l*)), including claims for benefits under a public retirement or pension system (§ 905, subd. (f)). This exception, however, only applies where an individual seeks money due under the terms of an existing pension system. (*Dalton v. East Bay Mun. Utility Dist.* (1993) 18 Cal.App.4th 1566, 1574 [23 Cal.Rptr.2d 230].) Where, as here, an individual alleges that the defendants treated them unfairly in administering the system, the government claim filing requirement applies. (*Ibid.*; *Baillargeon v. Department of Water & Power* (1977) 69 Cal.App.3d 670, 681 [138 Cal.Rptr. 338] [cause of action by employee against his retirement plan for breach of promise contained in a booklet published by the retirement plan was not exempt from the government claim requirement because employee was not suing for benefits payable pursuant to or under a public pension system].)

■ Although Plaintiffs also sought declaratory relief, the trial court correctly concluded that such relief was inappropriate. Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs. (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848 [92 Cal.Rptr. 179, 479 P.2d 379].) Where, as here, a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim. (*Jackson v. Teachers Ins. Co.* (1973) 30 Cal.App.3d 341, 344 [106 Cal.Rptr. 208].) ■ Similarly, Plaintiffs are not entitled to injunctive relief or specific performance because they had an adequate remedy at law. (5 Witkin, Cal. Proc. (4th ed. 1997) Pleading, §§ 759, 782, pp. 215 & 239.)

The foregoing discussion essentially moots Plaintiffs' argument that their claim for money or damages was merely incidental to their equitable claims for mandamus or injunctive relief. In any event, the government claim requirement applies to any monetary claim even if it is merely incidental to other relief sought. (*TrafficSchoolOnline, Inc. v. Clarke, supra,* 112 Cal.App.4th at p. 742.)

While the claims for recalculation of the Rate Amendment and equity adjustment seek monetary relief and are barred based on Plaintiffs' failure to

file a timely claim, we ·reject ·Defendants' argument that barring monetary relief, there is nothing left of Plaintiffs' case. Plaintiffs alleged that the termination of the Pension Plan and creation of the Contribution Plan were unreasonable and violated Defendants' ministerial duty under the contract clause of the California Constitution. As an· alternative theory, Plaintiffs sought a writ of mandate declaring the rollover into the Contribution Plan invalid and an order that Defendants perform their contractual duties under the Pension Plan.

Assuming that the trial court agrees with Plaintiffs' assertions and declares the rollover invalid, Plaintiffs would be entitled to an order directing Defendants to comply· with the terms of the Pension Plan. While such relief, if granted, may ultimately result in money being transferred between the two systems, such relief does not render the request a claim for money or damages that requires the filing of a government claim. (*Board of Administration v. Wilson,· supra*, 52 Cal.App.4th at pp. 1125–1126 [mandamus action challenging change in how pensions were financed and directing return to the previous financing system did not seek money or damages].) ·

We reject Defendants' assertion that allowing Plaintiffs to litigate the merits of their alternative theory is legally inconsistent with our conclusion that Plaintiffs' challenges to the Rate Amendment and equity adjustment are barred by the Claims Act. An order invalidating the rollover into the Contribution Plan and requiring that Defendants perform their contractual duties under the Pension Plan, if issued, does not address or impact the rate adjustment and would invalidate the equity adjustment to the extent the adjustment was part of the rollover. Plaintiffs will not be able to challenge the amount of the equity adjustment or the Rate Amendment.

Defendants also assert that they violated no ministerial duty when they terminated the Pension Plan and that mandamus relief is inappropriate to compel legislative action or an appropriation. Defendants, however, moved for summary judgment on the ground the entire action was barred based on Plaintiffs' failure to comply with the Claims Act. Accordingly, Defendants' assertions were not before the trial court, they are not properly before us and we express no opinion on the validity of these assertions or the merits of Plaintiffs' remaining claim.

In summary, Plaintiffs' request to invalidate the rollover and compel Defendants to change the retirement ·plan back to the Pension Plan was not one for money or damages. Thus, they were not required to comply with the Claims Act to obtain mandamus relief on this claim and summary judgment of the *entire* action based on Plaintiffs' failure to comply with the Claims Act was improper. Accordingly, this· matter is remanded to the trial court to

determine whether Plaintiffs are entitled to a writ of mandate invalidating the rollover and compelling Defendants to change the retirement plan back to the Pension Plan.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings in accordance with this opinion. Plaintiffs are entitled to their costs on appeal.

McConnell, P. J., and Aaron, J., concurred.

Petitions for a rehearing were denied June 8, 2007, and on June 8, 2007, and June 11, 2007, the opinion was modified to read as printed above. The petitions of both respondents and appellants for review by the Supreme Court were denied August 29, 2007, S153940.