Filed 12/21/15  Vo v. Cal. Dept. of Corrections CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KHUONG Q. VO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION et al.,<br><br>Defendants and Respondents. | C075300<br><br>(Super. Ct. No. 34201200128011CUNPGDS) |

Plaintiff and appellant Khuong Q. Vo, an incarcerated person representing himself in propria persona, appeals from a judgment dismissing his claims against defendant and respondent California Department of Corrections and Rehabilitation (CDCR) after the trial court sustained CDCR's demurrer without leave to amend.  The trial court sustained the demurrer on the grounds that Vo failed to timely comply with the Government Claims Act (Gov. Code, § 900 et seq.) (the Act).  We affirm on the related ground that Vo failed to comply with the statute of limitations.

## I.  BACKGROUND

Because this appeal is from an order sustaining a demurrer, we take the facts from the complaint, the allegations of which are deemed true for the limited purpose of

1

determining whether Vo has stated a viable cause of action. (See *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.) We also consider matters that are properly the subject of judicial notice. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)

Vo is an inmate at Pleasant Valley State Prison in Coalinga, California. He is currently serving an indeterminate sentence of 25 years to life for first degree murder.

Vo was committed to CDCR's custody on January 11, 1994. On February 9, 1994, a correctional counselor completed a form designating Vo as a gang member. In making the designation, the counselor relied on a probation report indicating that Vo had admitted an affiliation with the Dragon Family street gang. Vo alleges the probation report was incorrect, and denies making any such admission.

On March 22, 1994, Vo participated in a classification hearing at which the gang designation was affirmed. Prison officials reviewed and affirmed Vo's gang designation again on December 3, 1998, April 20, 2008, and February 2, 2009.

On July 13, 2010, Vo appeared before the Board of Parole Hearings (BPH) for a parole consideration hearing. The BPH found Vo unsuitable for probation based, in part, on its finding that Vo was affiliated with a gang but refused to admit it.

On January 5, 2011, Vo submitted an inmate grievance on CDCR Form 602 seeking first level review of his gang designation.[1] In an accompanying statement dated January 25, 2011, Vo emphasized, "this 602 and/or grievance is 'NOT' in connection with a board of parole hearing(s)— (BPH) finding and/or decision but moreso, in connection with an improper finding and gang classification of this (APPELLANT) by Kern Valley State official(s) that he is a 'MEMBER' of the Dragon family." Vo's first level appeal was denied on the ground that, "A review of your Probation Officer's Report

---

[1] A CDCR Form 602 is a form used by an inmate to initiate the administrative appeal process. (Cal. Code Regs., tit. 15, § 3084.2.)

(POR) . . . notes you told the Probation Officer you 'hung around with the Dragon Family.' "

Vo submitted a second level inmate appeal on March 27, 2011. Vo's second level appeal was denied on the ground that the probation report and other documentation in Vo's file confirmed his suspected gang association.

Vo submitted a third level inmate appeal on May 9, 2011. Vo's third level appeal was also denied.

On February 23, 2012, Vo filed a claim with the Victim Compensation and Government Claims Board. The claim form characterizes Vo's damages or injuries as "Mental and physical injuries resulting from being inaccurately designated a member of a gang in [CDCR's] records." The claim seeks more than $1.9 million in damages, calculated as follows: "$300 a day from February 9, 1994[,] through the present; the period [CDCR's] records were inaccurately maintained with his erroneous designation as a gang member." The Board considered the claim "only to the extent it asserts allegations that arise from facts or events that occurred during the six months prior to the date it was presented." The Board rejected the claim following a hearing on April 19, 2012.

Vo commenced the present action on July 12, 2012. Vo's complaint alleges that CDCR (1) failed to maintain accurate records in violation of Civil Code section 1798.45, subdivision (b), and (2) failed to perform its mandatory duty to maintain accurate records in violation of Government Code section 815.6 and Civil Code section 1798.18. The complaint seeks "damages in the amount of $300 a day from February 9, 1994[,] to the present." The complaint also seeks declaratory and injunctive relief.

3

CDCR demurred to the complaint.[2]  Vo opposed the demurrer.  In October 2013, the trial court sustained the demurrer without leave to amend on the grounds that Vo's claim to the Victim Compensation and Government Claims Board was untimely and Vo failed to properly exhaust his administrative remedies.  The trial court entered judgment shortly thereafter.  Vo filed a timely notice of appeal.

## II.  DISCUSSION

### A.     Standard of Review

We review de novo an order sustaining a demurrer to determine whether the complaint alleges facts sufficient to state a cause of action.  (*CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034, 1042.)  We exercise our independent judgment as to whether the complaint states a cause of action.  (*Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 86.)  " 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable probability falls squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### B.     Exhaustion of Administrative Remedies

The general rule is that "a litigant will not be afforded judicial relief unless he has exhausted available administrative remedies."  (*In re Dexter* (1979) 25 Cal.3d 921, 925;

---

[2]  We have not been provided with a copy of CDCR's demurrer.

see *Rojo v. Kliger* (1990) 52 Cal.3d 65, 83 [exhaustion of administrative remedies is required before initiating a private civil action].)  The exhaustion requirement applies to prisoner grievances, even where the prisoner seeks money damages unavailable in the administrative process.  (*Wright v. State of California* (2004) 122 Cal.App.4th 659, 671.)

"California prison regulations establish a multilevel administrative review process for the resolution of prison grievances.  (See Cal.Code Regs., tit. 15, §§ 3084.1-3084.7; *Vaden v. Summerhill* (9th Cir. 2006) 449 F.3d 1047, 1049.)  They provide that a prisoner may seek review by appeal of 'any policy, decision, action, condition, or omission by the department or its staff' that has a material adverse effect upon his 'health, safety, or welfare.' (Cal. Code Regs., tit. 15, § 3084.1, subd. (a).)."  (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1380.)

"To commence the administrative appeal process, the prisoner must initiate an *informal* appeal in which the prisoner and staff involved in the action or decision attempt to resolve the grievance informally.  (Cal.Code Regs., tit. 15, §§ 3084.2, subds. (a) & (b), 3084.6, subd. (c).)  The prisoner must utilize a DCR CDCR 602 form to describe the relief requested.  (Cal. Code Regs., tit. 15, § 3084.2, subd. (a).)  If an informal appeal does not resolve the grievance, the prisoner may proceed through a series of three formal levels of review.  (Cal. Code Regs., tit. 15, §§ 3084.1, subd. (a), 3084.7, subds. (a)-(c).)  Administrative remedies are not deemed exhausted until the appeal proceeds to a third level review, and administrative remedies are not deemed exhausted as to any new issue, information or person not included in the originally submitted DCR CDCR 602 form.  (Cal.Code Regs., tit. 15, § 3084.1, subd. (b); see *Woodford v. Ngo* (2006) 548 U.S. 81, 85-86 [outlining requirements in a prior iteration of California's grievance regulations].)"  (*Parthemore v. Col, supra,* 221 Cal.App.4th at p. 1380, italics in original.)

CDCR contends Vo failed to adequately exhaust his administrative remedies.  CDCR argues that Vo's causes of action accrued on February 9, 1994, when he received his gang designation.  In 1994, inmates were required to commence the administrative

review process "within 15 working days of the event or decision being appealed." (former Cal. Code Regs., tit. 15, § 3084.6, subd. (c).) Relying on the 1994 regulation, CDCR argues that Vo was required to commence the administrative review process within 15 working days of February 9, 1994. Vo did not commence the administrative review process until January 5, 2011, some seventeen years later. Therefore, CDCR concludes, Vo failed to timely exhaust his administrative remedies.

Vo offers two arguments in response. First, Vo contends his causes of action accrued on July 13, 2010, when he was denied parole. We address this contention at greater length below. For present purposes, we note that Vo's claims would still be untimely, even assuming they accrued on July 13, 2010.

In 2010, when BPH denied parole, inmates were required to commence the administrative review process "within 30 calendar days of . . . [t]he occurrence of the event or decision being appealed." (Cal. Code Regs., tit. 15, § 3084.8, subd. (b)(1).) Assuming arguendo that Vo's causes of action accrued when parole was denied, Vo would have been required to commence the administrative review process within 30 calendar days of July 13, 2010. (*Ibid.*) As noted, Vo did not commence the administrative review process until January 5, 2011, more than five months later. Therefore, Vo's claims were untimely, even assuming they accrued when parole was denied.

Second, Vo contends CDCR waived the filing deadline by deciding his untimely claims on the merits. We conclude, on the record before us, that CDCR waived its timeliness defense by failing to assert it during the administrative review process.

" 'It is well established that the statute of limitations is a personal privilege which is waived unless asserted at the proper time and in the proper manner, whether it be a general statute of limitations or one relating to a special proceeding. [Citations.] This general rule applies to proceedings before an administrative tribunal. [Citations.]' " (*Moore v. City of Los Angeles* (2007) 156 Cal.App.4th 373, 382; see also *Takahashi v.*

6

*Board of Education of Livingston Union School Dist.* (1988) 202 Cal.App.3d 1464, 1481 ["It has long been the law in California that any available defense should be asserted at the earliest opportunity and certainly at an administrative hearing"]; *Resource Defense Fund v. Local Agency Formation Com.* (1987) 191 Cal.App.3d 886, 894, disapproved on other grounds in *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499 ["It is axiomatic that judicial review is precluded unless the issue was first presented at the administrative level"]; *California Employment Com. v. MacGregor* (1944) 64 Cal.App.2d 691, 692-693 [failure to raise statute of limitation defense before state commission constitutes waiver of the issue].)

Here, though CDCR denies having waived its timeliness defense, nothing in the record demonstrates that CDCR preserved the defense by asserting it during the administrative review process. On this record, we conclude that CDCR has failed to carry its burden of showing that Vo failed to timely exhaust his administrative remedies.

C.     *Government Claims Act*

CDCR argues that Vo failed to timely comply with the Government Claims Act, which requires that all claims for money or damages against public entities, such as CDCR, be presented to the responsible public entity before a lawsuit is filed. (Gov. Code, §§ 905, 945.4; *Christopher P. v. Mojave Unified School Dist.* (1993) 19 Cal.App.4th 165, 168.) Under the Act, claims for personal injury and property damage must be presented within six months of accrual of the cause of action; all other claims must be presented within one year. (Gov. Code, § 911.2.) Relying on the Act, the trial court concluded that "Vo was required to present his claim to the Board [within] one year of February 9, 1994, when his cause of action accrued."

We question the trial court's conclusion that the Act applies to Vo's entire action, as opposed to only his claims for monetary relief.[3] The Act does not apply "to nonpecuniary actions, 'such as those seeking injunctive, specific, or declaratory relief.' [Citation.]" (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1493 (*Canova*).) Here, though Vo's complaint includes a prayer for money damages, the complaint also seeks declaratory and injunctive relief. We do not believe the Act applies to Vo's causes of action to the extent they seek nonmonetary relief (*Canova, supra,* 150 Cal.App.4th at p. 1498); however, we need not decide the question because we conclude the entire action is barred by the statute of limitations.

D.      *Statute of Limitations*

The statute of limitations for Vo's first cause of action, for violations of Civil Code section 1798.45, subdivision (b), is "two years from the date on which the cause of action arises." (Civ. Code, § 1798.49.) The statute of limitations for Vo's second cause of action, for violations of Government Code section 815.6 and Civil Code section 1798.18, is less straightforward.

As noted, Civil Code section 1798.49 establishes a two-year statute of limitations for claims arising under the Information Practices Act (Civ. Code, section 1798 et seq) (IPA). By its terms, Civil Code section 1798.49 applies to "[a]n action to enforce any liability created under [Civil Code] Sections 1798.45 to 1798.48, inclusive." We assume without deciding that Civil Code section 1798.18 gives rise to a private right of action. (But see *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596 ["A violation of a state statute does not necessarily give rise to a private cause of action"].) We also assume without deciding that Vo's second cause of action, for violations of Government

_____

[3] We assume for the sake of argument that CDCR did not waive its timeliness defense by deciding Vo's otherwise untimely claims on the merits.

8

Code section 815.6 and Civil Code section 1798.18, is subject to the three year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty of forfeiture." (Code Civ. Proc., § 338, subd. (a); cf. *Snyder v. California Ins. Guarantee Assn.* (2014) 229 Cal.App.4th 1196, 1208 [declaratory judgment action to enforce a statutory liability must be brought within same three-year period as an action for damages or injunction on the same liability].)

We further assume that Vo is entitled to the benefit of Code of Civil Procedure section 352.1, subdivision (a), which tolls the statute of limitations for up to two years for certain civil actions brought by prisoners who are serving less than life sentences. (*Grasso v. McDonough Power Equipment, Inc.* (1968) 264 Cal.App.2d 597, 599-601 [inmate serving life sentence with possibility of parole entitled to claim benefit of predecessor to Code Civ. Proc., § 352.1, subd. (a)].) Thus, giving Vo the benefit of every possible doubt, we assume that the complaint was subject to a five-year statute of limitations, at the outset.

"The general rule for defining the accrual of a cause of action sets the date as the time when the cause of action is complete with all of its elements." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 389, 397 [a cause of action accrues " 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises' "].) Stated another way, a cause of action accrues when " 'the plaintiff sustains actual and appreciable harm. [Citation.] Any "manifest and palpable" injury will commence the statutory period. [Citation.]' " (*Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 879.)

Vo contends his causes of action accrued on July 13, 2010, when he was denied parole. Specifically, Vo claims he was not eligible for parole prior to July 13, 2010, and therefore, the erroneous gang designation could not have caused any actual injury before that date. We are not persuaded.

9

Preliminarily, we take judicial notice of the fact that "the validation of an inmate as a gang member or associate, like a prison disciplinary decision, can implicate the inmate's credits, thereby affecting the inmate's sentence, as well as significantly affecting his housing assignment and other conditions of confinement." (*In re Fernandez* (2013) 212 Cal.App.4th 1199, 1216; see also *In re Morales* (2013) 212 Cal.App.4th 1410, 1413 ["An inmate is assigned to a prison commensurate with the inmate's security level classification, as each of California's prisons has a designated security level based on its physical construction, type of housing (dormitories or cells), and the extent of armed coverage. . . . [¶] . . . Once assigned to a prison, prison officials use classification committees to determine an inmate's program and cell assignments at the institution"].) Against this regulatory backdrop, we can reasonably infer that Vo's designation as a gang member had an immediate adverse effect on Vo's housing assignment and other conditions of confinement.

We need not speculate, however, as Vo's own allegations confirm that he suffered actual injury when he received the gang designation on February 9, 1994. As noted, Vo's complaint includes a prayer for money damages "in the amount of $300 a day from February 9, 1994 to the present period, in which [Vo's] records were inaccurately maintained with his erroneous designation as a gang member." Although Vo may have suffered further injury when BPH denied parole on July 13, 2010, the statute of limitations began to run the moment Vo sustained any injury, however slight. (*Spellis v. Lawn* (1988) 200 Cal.App.3d 1075, 1080-1081 [" ' "[Where] an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. *It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date . . . .*" ' "].) Thus, Vo's own allegations confirm that he suffered actual injury when he received his gang designation on February 9, 1994.

10

Vo's other filings further confirm that his claims arise out of the erroneous gang designation in 1994, not the denial of parole in 2010. As noted, Vo filed an initial inmate grievance on CDCR Form 602 in January 2011, stating: "this 602 and/or grievance is 'NOT' in connection with a board of parole hearing(s)— (BPH) finding and/or decision but moreso, in connection with an improper finding and gang classification of this (APPELLANT) by Kern Valley State official(s) that he is a 'MEMBER' of the Dragon family." In his submission to the Board in February 2012, Vo characterized his claim as "Mental and physical injuries resulting from being inaccurately designated a member of a gang in [CDCR's] records." Thus, Vo has consistently characterized his claims as arising out of the erroneous gang designation.

On this record, we conclude that Vo's causes of action accrued on February 9, 1994, when Vo received his gang designation. As a result, Vo was required to file his complaint on or before February 9, 1999, at the very latest. (Code Civ. Proc., §§ 338, subd. (a); 352.1, subd. (a).) Having failed to do so, Vo's complaint was untimely. The trial court properly sustained the demurrer without leave to amend.

## III.  DISPOSITION

The judgment is affirmed.


/S/

RENNER, J.


We concur:


/S/

RAYE, P. J.


/S/

HOCH, J.